WEYERHAEUSER STEAMSHIP COMPANY, a corporation, Libelant,

v.

UNITED STATES of America, Respondent.

UNITED STATES of America, Cross-Libelant,

v.

WEYERHAEUSER STEAMSHIP COMPANY, a corporation, Cross-Respondent.

St. Paul Fire & Marine Insurance Co., a corporation, and Fireman's Fund Insurance Co., a corporation, Intervening Libelants.

No. 27359.

United States District Court N. D. California, S. D.

July 2, 1959.

←144

---

Graham, James & Rolph, San Francisco, Cal., for libelant and cross-respondent Weyerhaeuser.

Robert H. Schnacke, U. S. Atty., San Francisco, Cal., Keith R. Ferguson, Sp. Asst. to the Atty. Gen., John F. Meadows, Atty., Admiralty and Shipping Section, Dept. of Justice, San Francisco, Cal., for the United States.

Derby, Cook, Quinby & Tweedt, San Francisco, Cal., for intervening libelant.

ROCHE, District Judge.

This is an action by libelant, owner of the F. E. Weyerhaeuser, brought under the provisions of Public Vessels Act, 46 U.S.C.A. § 781 et seq., against respondent, owner of the Pacific, for damages sustained by the Weyerhaeuser in a collision between the two vessels. Cross-libel by respondent for damages suffered by the Pacific.

At 5:30 P.M. on September 8, 1955, the Weyerhaeuser, a steel "Liberty" type cargo vessel 441 feet long with a gross tonnage of 7,218 tons, and the Pacific, a steel hopper dredge of 837 tons and 180 feet in length, collided approximately one and one-half miles west and slightly south of Cape Arago light off the Oregon coast.

At the time of the collision the sea was calm with variable breezes. There was dense fog and visibility was poor.

The Weyerhaeuser was southbound from Coos Bay, Oregon to Los Angeles carrying a cargo of lumber. The Pacific was northbound from Bandon, Oregon to Coos Bay without cargo. Each vessel alleges having radar knowledge of the other's progress on an opposing course 18 minutes prior to the collision, at which time the two were 2.8 miles apart. Each remained almost continuously cognizant, by radar, of the other's position and bearing up to the time of the collision. The Weyerhaeuser made at least one course change to port between 5:00 P.M. and the collision and was under way with her only lookout positioned on the bridge. The Pacific made three course changes to starboard in the half-hour preceding the collision. The bow of the Pacific collided with the starboard side of the Weyerhaeuser and the two vessels parted again almost immediately. Communications were established some 30 minutes later and the vessels were able to proceed back to port unassisted.

Having considered the evidence, the law and the briefs and arguments of counsel, the court makes the following findings of fact with respect to each vessel.

### The Weyerhaeuser

Respondent contends that the lookout on the Weyerhaeuser was improperly positioned. It is undisputed that at the time of the collision no lookout was stationed in the bow of the Weyerhaeuser, although one was positioned on the bridge. Rule 29 of the International Rules for Navigation at Sea requires that a proper lookout be kept.[1] The Rules themselves do not prescribe where the lookout must be posted, but the courts have been rigid in holding that lookouts must be stationed as far forward as possible, especially when vessels are proceeding under conditions of

1. 33 U.S.C.A. § 147a.

reduced or obstructed visibility. The Ottawa, 1865, 3 Wall. 268, 70 U.S. 268, 18 L.Ed. 165; The Adrastus, 2 Cir., 1951, 190 F.2d 883; Wood v. United States (The Bucentaur-Wilson Victory), D.C.S.D.N.Y.1954, 125 F.Supp. 42. The Weyerhaeuser's knowledge that another vessel was approaching would make the command even more imperative. The record reveals no substantial evidence that weather or topographical conditions excused compliance with the rule. The requirement is so strict that the presumption of contributory fault arising from its neglect is the same as that created by statutory violation. The Adrastus, supra; Wood v. United States (The Bucentaur-Wilson Victory), supra. Thus, the Weyerhaeuser is liable for her fault unless she can show that it did not and could not have contributed to the collision. The Pennsylvania, 1873, 19 Wall. 125, 86 U.S. 125, 22 L.Ed. 148. She failed to do this; a bow lookout, being closer to the Pacific when she was sighted, might have given earlier warning and the time gained might have enabled the Weyerhaeuser to avoid the collision.

■■ Rule 16 of the International Rules states that a vessel proceeding under conditions of restricted visibility shall go at a "moderate" speed.[2] Such a speed is one that would enable a vessel to stop in one-half the range of visibility. The Silver Palm, 9 Cir., 1938, 94 F.2d 754. Libelant contends that visibility was 375 feet. Assuming *arguendo* that figure to be correct, a "moderate" speed would have allowed the Weyerhaeuser to stop in half that distance, or 188 feet from the forwardmost point on the ship that lookout was maintained. As the distance from bow to bridge on the Weyerhaeuser is 205 feet, and the forwardmost lookout was positioned on the bridge, it follows that no speed could have been "moderate" under the circumstances. The evidence is convincing that the Weyerhaeuser was moving fast when the two ships collided. The nature of

the damage, the distance she traveled after collision, inadvertent admissions from her crew, dubious log and bell book entries and testimony from those aboard the Pacific who observed her all lead to that conclusion. And it is undisputed that she was under way until minutes before impact, with the same conditions prevailing. Again, the Weyerhaeuser was unable to sustain the burden imposed upon her by statutory violation. The Pennsylvania, supra. She is liable for contributory fault on a second count.

■ Rule 18 provides that when two vessels are meeting end on, or nearly so, each shall alter course to starboard so as to effect a port-to-port passing.[3] The record discloses that the Weyerhaeuser and the Pacific admit detecting each other on opposing courses as early as 5:12 P.M. The Pacific turned to starboard but the Weyerhaeuser turned to port, and again they were on collision courses. Rule 18, written before the advent of radar as an aid to navigation, specifically refers to instances in which the vessels or their lights are visible to each other. This court can see no reason why its application should not extend to a situation in which two vessels "see" each other by radar.

It is argued that under the conditions of the instant case a right turn was not warranted because neither vessel could know that the other had radar and would abide by the rules. But even if the Pacific had not had radar and had maintained a straight course, a right turn by the Weyerhaeuser would have avoided the collision and the same is true if the situation is reversed. Certainly, a left turn was totally unjustified. It is difficult to see how application of Rule 18 under these conditions would have anything but a positive effect upon safety.

Two cases are cited in support of the position that the meeting and passing rules do not apply in fog. Borcich v. Ancich, 9 Cir., 1951, 191 F.2d 392; The George F. Randolph, D.C.S.D.N.Y.1912, 200 F. 96. Both are distinguishable

---

**2.** 33 U.S.C.A. § 145n.

**3.** 33 U.S.C.A. § 146b.

from the instant case. In the former, fog made the burdened vessel unable to determine that there was another vessel to starboard, and in the latter, both vessels were uncertain of each other's location in the fog. Here, the Weyerhaeuser knew the location and course of the Pacific when she was almost three miles away. The court must conclude that the Weyerhaeuser should have turned right instead of left, and that her failure to do so is a statutory violation. She was unable to prove that her fault could not have contributed to the collision, and under the Pennsylvania rule, she is again liable.

#### The Pacific

■■ Libelant asserts that the Pacific was proceeding at an "immoderate" rate of speed in violation of Rule 16.[4] Respondent alleges that the Pacific was moving at Slow Ahead and that her headway was practically stopped when the Weyerhaeuser struck her. The testimony from those aboard the Pacific is inconsistent and contradictory. The tendency of officers and crew to "stick by the ship" in such matters is well known. The Silver Palm, supra. The Pacific's logs are grossly inadequate. The absence of log entries tends to discredit the testimony of witnesses from the vessel on disputed issues. Arkansan-Knoxville City, D.C.S.D.Cal., 1939 A.M.C. 352.

■ Second Assistant Engineer Martin of the Pacific recorded the orders that he received immediately prior to the collision in his personal notebook and in the engine room log. The notebook relates, " * * * 5:30 P.M. * * * Heavy Fog—Whistle Operating—Martin on Throttles—Engines Full Ahead—Received 'Slow' port and starboard followed by immediate Full Astern * * * About 10 seconds later felt impact from bow * * * Time from Slow Ahead to Full Astern not over 5 seconds." These observations were recorded shortly after the collision, were later confirmed by Martin (although loyalty induced him to attempt to moderate their impact at the

trial) and have not been shown to be influenced by considerations reflecting upon their credibility. In the event of conflict between deck officers and engine room personnel as to a vessel's speed changes, the testimony and records of the latter are entitled to greater credence because they have better means of knowledge. The Bowns-Pattison Transportation Company v. The Beverly, The Brinton, D.C.S.D.N.Y.1915, 1934 A.M.C. 316. Upon the presumptions created by the absence or alteration of log entries and the unconscious or reluctant admissions against the ship, many cases must be decided. The Ernest H. Meyer, 9 Cir., 1936, 84 F.2d 496. The court finds that the Pacific was proceeding at her full speed of 7 knots prior to the collision.

Captain Albee testified that in his opinion the Pacific could come to a stop from full ahead in three lengths of the vessel, or approximately 540 feet. The most generous estimates of visibility at the time in question placed it at 375 feet. It is clear that the Pacific was not proceeding within the "moderate" speed required by statute, since she was not able to stop within one-half the range of visibility, or 188 feet. The Silver Palm, supra. The record substantiates this conclusion and indicates that had the Pacific been able to stop in her share of the range of visibility the collision might have been avoided. Respondent was unable to overcome the presumption of contributory fault arising from the Pacific's violation of Rule 16. The Pennsylvania, supra.

Respondent contends that the Pacific's faults, if any, were committed *in extremis* and may be excused. But the nature of an error *in extremis* is that it is committed when collision is imminent and there is no opportunity to exercise proper judgment. The Chinook, 2 Cir., 1929, 34 F.2d 614. There are no hard or fast rules to apply, but the error of the Pacific was clearly not committed *in extremis*. Captain Albee admits turning the Pacific sharply to starboard five min·

4. 33 U.S.C.A. § 145n.

**668**

utes before the collision and the preponderance of evidence shows that the Pacific then proceeded at "immoderate" speed on her new course. Evidently Albee's intention was to remove the Pacific from the danger area as quickly as possible in whatever time remained. Albee may have been unfortunate but the court cannot avoid the conclusion that prudent seamanship would have been a satisfactory cure.

The International Rules require that a vessel hearing the fog signal of another vessel, the position of which is not ascertained, shall stop her engines and then navigate with caution until the danger is past.[5] The record discloses that neither vessel stopped her engines upon first hearing the fog signal of the other, but that at the time, each had the other's position located on her radar screen. The court is of the opinion that "ascertainment" of a vessel's position by radar is adequate justification for failure to comply with the technical requirement that engines be stopped.

In view of the foregoing it is the finding of this court that the collision was caused by the mutual fault of the Weyerhaeuser and the Pacific.

Libelant and cross-respondent Weyerhaeuser Steamship Company and respondent and cross-libelant United States of America are each entitled to recover from the other one-half of all provable damages and court costs sustained as a result of this collision according to the settled admiralty law in cases of mutual fault collisions.

In accordance with the foregoing, if the parties cannot agree on the amount of damages, the matter shall be referred to a special commissioner to take evidence upon the amount of damages sustained by each party and to calculate the net balance payable as between the Weyerhaeuser Steamship Company and the United States of America.

It is so ordered.