February 27, 1978

## 78-12   MEMORANDUM OPINION FOR THE GENERAL COUNSEL, DEPARTMENT OF ENERGY

### Arms Control and Disarmament Act (22 U.S.C. § 2576)—Arms Control Impact Statements—Nonweapons Program

In response to your request, we have considered the question whether § 36(a) of the Arms Control and Disarmament Agency Act, as amended, 89 Stat. 758, 22 U.S.C. § 2576(a), permits the Director of the Arms Control and Disarmament Agency (ACDA) to require the Department of Energy to prepare an "Arms Control Impact Statement" (ACIS) for research, development, or production programs that do not involve "weapons" technology. We understand that this would involve nonmilitary programs that may affect arms control policy. For the reasons stated below, we conclude that § 36(a) does not require the preparation of an ACIS for programs not designed or intended to be applied as weapons.

Section 36(a) of the Arms Control and Disarmament Agency Act provides as follows:

> (a) In order to assist the Director in the performance of his duties with respect to arms control and disarmament policy and negotiations, any Government agency preparing any legislative or budgetary proposal for—
>
> (1) any program of research, development, testing, engineering, construction, deployment, or modernization with respect to nuclear armaments, nuclear implements of war, military facilities or military vehicles designed or intended primarily for the delivery of nuclear weapons,
>
> (2) any program of research, development, testing, engineering, construction, deployment, or modernization with respect to armaments, ammunition, implements of war, or military facilities, having—
>
> (A) an estimated total program cost in excess of $250,000,000, or

54

(B) an estimated annual program cost in excess of $50,000,000, or

(3) any other program involving weapons systems or technology which such Government agency or the Director believes may have a significant impact on arms control and disarmament policy or negotiations,

shall, on a continuing basis, provide the Director with full and timely access to detailed information, in accordance with the procedures established pursuant to section 2575 of this title, with respect to the nature, scope, and purpose of such proposal.

The section requires reports to the Director for three categories of programs: (1) all programs involving nuclear armaments, implements of war, or their delivery systems; (2) programs involving "armaments, ammunition, implements of war, or military facilities" costing $250 million or more or $50 million per year; and (3) "any other program involving *weapons systems or technology*" which the agency or the Director of ACDA "believes may have a significant impact on arms control and disarmament policy or negotiations." [Emphasis added.] These reports are the first stage in preparing an ACIS.[1] Since the programs in question do not fall within category (1) or (2), the issue is whether the term "weapons" in subsection (a)(3) modifies "technology" as well as "systems," so as to require reports only for "weapons technology."

We understand that ACDA believes that "weapons" does not modify "technology" and that it can therefore require an ACIS for such nonweapons programs as the breeder reactor. On the other hand, the Department of Energy concludes that established principles of statutory construction and the legislative history demonstrate that § 36(a)(3) should be read to mean "weapons systems or weapons technology."

It is a familiar principle of statutory construction that terms should be read in context and that specific terms control general ones. *See, Philbrook* v. *Glodgett,* 421 U.S. 707, 713-714 (1975); *Weyerhauser S.S. Co.* v. *United States,* 372 U.S. 597, 600-601 (1963). The whole of § 36(a) is concerned with the effect of programs for weapons, delivery systems, and supporting facilities on arms control. Subsections (1) and (2) require reports on weapons programs that are significant *per se* because of their nature or size. Subsection (3), in this context, gives ACDA discretion to require reports on lesser weapons programs that may have significant effects. The structure of subsection (3) is consistent with this interpretation. Modifying a series of terms with an adjective placed at the head is a common way of preventing needless repetition. It is reasonable to conclude, as you have, that the draftsman of § 36(a) did not intend to expand the scope of subsection (3) beyond the remainder of the section merely by using a familiar stylistic device.

---

[1]Under § 36(b)(2)(A) of the Act, an ACIS must accompany all requests to Congress for authorization or appropriations for category (1) or (2) programs. Under § 36(b)(2)(B), a category (3) program requires an ACIS only if NSC accepts the Director's advice that the program will have a significant impact on arms control policy or negotiations.

The legislative history supports this interpretation. Section 36(a)(3) originated in the House of Representatives,[2] and the legislative history is particularly significant. The general explanation in the House committee report states that § 36 would:

> Generate[s] vital and necessary information for both the Executive Branch and Congress by:
>
> (a) providing for [ACDA] participation in assessing and analyzing the impact on arms control and disarmament policy of proposed weapons programs or technology . . . .[3]

This, it continues, would allow Congress to exercise an informed foreign policy judgment "in the all important area of proposed defense programs."[4] The bill would accomplish this by requiring reporting of all weapons programs above its dollar limits. In addition, the report continues:

> . . . For weapons programs which fall below the $50 million annual limit and policy issues with no expenditure as such, the legislation provides a discretionary authority for the Director to make an arms control and disarmament assessment and analysis identical to the procedure outlined above. The intent in providing this discretionary authority to the Director is to include programs which, regardless of cost, have a potentially significant arms control impact. Included in this intent are items of a "seminal" nature, such as major philosophical or doctrinal changes in defense posture or new weapons concepts in various stages of research and development—any of which could have far-reaching implications for arms control and disarmament policy and planning.[5]

The section-by-section analysis of the bill states that "weapons systems or technology" refers to the above programs.[6] Finally, Representative Zablocki, Chairman of the House Foreign Affairs Committee and floor manager of the bill, said in his opening statement that the purpose of § 36(a) was to allow ACDA participation in the assessment of "defense programs."[7]

It thus appears that the bill was concerned with the effect of "defense programs" on arms control. Moreover, there is strong evidence that the House understood the bill to be limited to such programs. Representative Simon introduced an amendment that would have required ACDA to report to the National Security Council (NSC) and Congress on the transfer of any nuclear

---

[2] *See* H. Conf. Rept. No. 94-660, 94th Cong., 1st sess. (1975), at 26; 121 Cong. Rec. 21853 (1975).

[3] H. Rept. No. 94-281, 94th Cong., 1st sess. (1975), at 3.

[4] *Id.*, at 5.

[5] *Id.*, at 6.

[6] *Id.*, at 11.

[7] 121 Cong. Rec. 21848 (1975).

material to a foreign country.[8] Its purpose, he stated, was to assure that ACDA informed the NSC and Congress of the impact of such transfers on nuclear proliferation.[9] A point of order was then raised that the amendment covered nuclear material transferred for peaceful purposes and was thus not germane to the bill. Representative Jordan, in the chair, ruled that the amendment was not germane to § 36, "which merely requires the furnishing of information regarding defense systems." The ruling was not challenged.

From the committee report and the history of the Simon amendment, it is thus evident that the House intended § 36 to apply only to programs with a military purpose. The history of the Senate version of the bill is not to the contrary. Senators Humphrey and Stennis, who prepared that version, explained that the "weapons system or technology" provision was intended to give ACDA discretion to study less important weapons programs.[10] Nowhere in the legislative history, in either House, is there support for the conclusion that § 36(a)(3) includes all technology which may affect arms control.

We conclude that § 36(a)(3) of the Arms Control and Disarmament Agency Act does not give the Director of ACDA authority to require reports on the Department of Energy's nonmilitary technology programs which may affect arms control policy or negotiations.[11]

LARRY A. HAMMOND
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[8]The amendment provided:

No agreement between the United States and any foreign country providing for the sale or other transfer to such country of any nuclear material may be entered into, and no license for the sale or other transfer to any foreign country of any nuclear material may be issued unless the Director has submitted a report analyzing the impact of such sale or other transfer on arms control and disarmament policies and negotiations to the National Security Council and the Congress. 121 Cong. Rec. 21853 (1975).

[9]121 Cong. Rec. 21854.

[10]121 Cong. Rec. 28687-88 (1975).

[11]We note that under § 35 of the Arms Control and Disarmament Agency Act, 22 U.S.C. § 2575, and Executive Order No. 11044, 3 CFR 627 § 2 (1959-1963 Compilation), the President may require the Department of Energy to keep ACDA informed "on all significant aspects of the United States arms control and disarmament policy and related matters, including current and prospective policies, plans, and programs."