**In the Matter of the Complaint of IONIAN GLOW MARINE, INC., as Owner of the M/V STAR LIGHT, for Limitation of or Exoneration from Liability.**

Civ. A. No. 79–259–N.

United States District Court,
E. D. Virginia,
Norfolk Division.

March 25, 1981.

Philip N. Davey, Seawell, McCoy, Dalton, Hughes, Gore & Timms, Norfolk, Va., for plaintiff.

Thomas L. Jones, Trial Atty., Torts Branch, Civil Division, U. S. Dept. of Justice, Washington, D. C., John F. Kane, Asst. U. S. Atty., Norfolk, Va., for defendant.

## OPINION AND ORDER

CLARKE, District Judge.

This matter is before the Court on Cross-Motions for Partial Summary Judgment. This case arises out of a collision between the USS FRANCIS MARION and the M/V STAR LIGHT, owned by Ionian Glow Marine, Inc. (Ionian Glow). The United States and Ionian Glow have settled the liability issue of the case agreeing that the United States is to pay 35% of Ionian Glow's provable damages and Ionian Glow is to pay 65% of the United States' provable damages. The sole issue before this Court is whether Ionian Glow may include in its provable damages any amounts paid by Ionian Glow to the two officers and one enlisted member

of the crew of the USS FRANCIS MARION[1] who were injured as a result of the collision while performing their regular duties aboard the ship.

Ionian Glow asserts that the Public Vessels Act, 46 U.S.C. § 781–790, provides that public vessels, such as the USS FRANCIS MARION, have the same liability as is imposed by admiralty law on private shipowners. Ionian Glow asserts that, since courts have allowed shipowners to include in their provable collision damages payments made to third parties, Ionian Glow is entitled to include in its provable damages payments made to these injured uniformed servicemen.

The Government contends that uniformed active duty personnel are prohibited from recovering from the United States directly or indirectly based on a tort claim where the alleged tort occurs during the ordinary course of their duties. The Government states that by allowing Ionian Glow to include in its provable damages any payments made to the injured servicemen, the Government will be held liable indirectly for such injuries by its having to pay 35% of those damages.

*Discussion*

■ The United States, as a sovereign nation, is immune from any suit to which it has not consented. *See Feres v. United States*, 340 U.S. 135, 139–40, 71 S.Ct. 153, 156, 95 L.Ed. 152 (1950). Thus, the United States is not liable for torts committed by it except where it can be shown that the right to sue comes within some special statute permitting the suit such as the Public Vessels Act, 46 U.S.C. § 781–790, or the Federal Tort Claims Act, 28 U.S.C. § 1346, 2671–2680. In the present case, Ionian Glow has brought suit against the United States pursuant to the Public Vessels Act. The Public Vessels Act " 'was intended to impose on the United States the same liability (apart from seizure or arrest under a libel *in rem* )

as is imposed by the admiralty law on the private shipowner. . . .' " *Weyerhaeuser S. S. Co. v. United States*, 372 U.S. 597, 600, 83 S.Ct. 926, 928, 10 L.Ed.2d 1 (1962), citing *Canadian Aviator, Ltd. v. United States*, 324 U.S. 215, 228, 65 S.Ct. 639, 646, 89 L.Ed. 901 (1944). The Federal Tort Claims Act contains similar language, stating, "The United States shall be liable ... in the same manner and to the same extent as a private individual under like circumstances. . . ." with certain exceptions not relevant here. 28 U.S.C. § 2674. Although these statutes purport to waive generally the sovereign immunity of the United States, special limitations have developed when the claim against the United States is brought by a member of its armed forces.

In *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the United States Supreme Court created an exception to the Government's general waiver of sovereign immunity in the Tort Claims Act. In *Feres*, the Court held that the Government is not liable for injuries to servicemen "where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146, 71 S.Ct. at 159. The Court advanced three reasons for limiting the Government's waiver of sovereign immunity. First, the Court noted that the Act intends that the United States incur liability parallel to that of a private citizen under the same circumstances. The Court noted that no American law has ever permitted a serviceman to recover for negligence against his superior officers or the Government, "nor is there any liability 'under like circumstances,' for no private individual has power to conscript or mobilize a private army with such authorities over persons as the Government vests in echelons of command." *Id.* at 140–41, 71 S.Ct. at 156. The Court concluded that Congress in passing the Act could not have intended to impose liability for negligence where there was no

1. The three injured claimants are: Commander Leary, who is still on active duty and is not expected to receive any disability payments; ENC Colley, who has retired with no disability; Commander Miller, who is still on active duty serving on a limited status pending a determination by a medical discharge evaluation board. The crew members would be compensated, if at all, under the Veterans Benefits Act, 38 U.S.C. § 321 *et seq.*

liability before. Second, the Court noted that the Act makes "... the law of the place where the act or omission occurred" govern any resulting liability. 28 U.S.C. § 1346(b). The Court stated that the relationship between the Government and members of its armed forces is "distinctively federal in character" and that it "makes no sense" to allow claims to be governed by local tort law. *Id.* at 143, 71 S.Ct. at 158. Third, the Court noted that Congress has enacted generous death benefits and disability benefits for servicemen and their families. In *United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), the Supreme Court discerned a policy rationale for the *Feres* decision: "[t]he peculiar and special relationship of the soldier to his superiors, the effects of maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty." *Id.* at 112, 75 S.Ct. at 143.

■ The rationale underlying the *Feres* doctrine limiting the Government's waiver of sovereign immunity under the Federal Tort Claims Act applies to suits brought by uniformed service personnel against the United States pursuant to the Government's waiver of sovereign immunity in the Public Vessels Act. *Beaucondray v. United States*, 490 F.2d 86 (5th Cir. 1974); *Charland v. United States*, 615 F.2d 508 (9th Cir. 1980). Accordingly, the United States cannot be held directly liable for injuries incurred by its active service members while engaged in their duties whether the action is brought pursuant to the Federal Tort Claims Act or the Public Vessels Act.

In *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), the Supreme Court considered whether a third party could bring suit against the Government under the Federal Tort Claims Act seeking indemnity for any damages it may be required to pay to a serviceman where the serviceman's direct action against the Government is barred by *Feres*. In *Stencel*, Donham, a captain in the Air National Guard, was injured permanently when the egress life-support system of his fighter aircraft malfunctioned during an emergency. Stencel Aero Engineering Corporation manufactured the ejection system according to Government specifications and used certain component parts provided by the United States.[2] Donham received a lifetime pension pursuant to the Veterans Benefits Act, 38 U.S.C. § 321 *et seq.* and filed suit claiming damages against the United States and Stencel alleging that the system malfunctioned as a result of the negligence of the defendants.[3] *Id.* at 668, 97 S.Ct. at 2056. Stencel crossclaimed against the United States claiming that any malfunction was due to faulty specifications, requirements and components provided by the United States and sought indemnity for any sums it may be required to pay Donham.

The Supreme Court held that the right of a third party to recover in an indemnity action against the United States is limited by the rationale of *Feres* where the injured party is a serviceman. The Court examined and applied the principles underlying the *Feres* decision to the facts in the *Stencel* case and concluded that "the third-party indemnity action in this case is unavailable for essentially the same reasons that the direct action by Donham is barred by *Feres.*" *Id.* at 673, 97 S.Ct. at 2058.

Specifically, the Court stated that the relationship between the Government and its "suppliers of ordnance" is "distinctively federal in character." *Id.* at 672, 97 S.Ct. at 2058. The Court noted that the Government performs a "unique, nationwide func-

---

2. There was no contractual relationship between the United States and Stencel. (Stencel had contracted with a prime Government contractor to provide the pilot eject system.) *Stencel Aero Engineering Corp. v. United States*, 431 U.S. at 667–68 n.2, 97 S.Ct. at 2056 n.2.

3. Donham's claim against the United States was dismissed as barred by *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

tion in protecting the security of the United States. To that end military authorities frequently move large numbers of men, and large quantities of equipment, from one end of the continent to the other, and beyond. Significant risk of accidents and injuries attend such a vast undertaking." *Id.* at 672, 97 S.Ct. at 2058. The Court stated further that, "[i]f, as the Court held in *Feres,* it makes no sense to permit the fortuity of the situs of the alleged negligence to affect the liability of the Government to a serviceman who sustains service-connected injuries, 340 U.S. at 143, 71 S.Ct. at 158, it makes equally little sense to permit that situs to affect the Government's liability to a Government contractor for the identical injury." [4] *Id.* at 672, 97 S.Ct. at 2058.

Second, the Court considered the existence of the military compensation scheme. Stencel argued that "although it may be fair to prohibit direct recovery by servicemen under the Act, since they are assured of compensation regardless of fault under the Veterans' Benefits Act, [Stencel] as a third-party claimant should not be barred from indemnity for damages which it may be required to pay to the serviceman, and as to which it has no alternative federal remedy." *Id.* at 672, 97 S.Ct. at 2058. In response, the Court stated that the Veterans' Benefits Act serves two purposes: it provides quick and efficient compensation for injured servicemen and establishes an upper limit of liability that the Government may incur for service-connected injuries. The Court stated that to allow Stencel's claim for indemnity would circumvent this limitation and thereby frustrate one of the essential purposes of the Veterans' Benefits Act.

Third, the Court stated that it was "quite clear that where the case concerns an injury sustained by a soldier while on duty, the effect of the action upon military discipline is identical whether the suit is brought by the soldier directly or by a third party." *Id.* at 673, 97 S.Ct. at 2059.

Ionian Glow urges the Court to apply the reasoning in *Weyerhaeuser S. S. Co. v. United States,* 372 U.S. 597, 83 S.Ct. 926, 10 L.Ed. 1 (1963). *Weyerhaeuser* involved a collision between an Army dredge and a private vessel. The private vessel brought suit to recover damages against the United States under the Public Vessels Act, and the United States filed a cross-libel. The district court found that the collision had occurred through the mutual fault of both vessels and held that each party was entitled to claim one-half of its provable damages and court costs.[5]

A United States civil service employee on board the dredge sustained personal injuries as a result of the collision. He received compensation from the Government under the Federal Employees' Compensation Act, 5 U.S.C. § 751 *et seq.,* and filed suit against the owner of the Weyerhaeuser to recover damages. This suit was subsequently settled for $16,000 and, as required by the Compensation Act, the employee repaid to the United States the amount he had received as statutory compensation. 5 U.S.C. § 777. The United States objected to the vessel's including this $16,000 as part of its provable collision damages. The Government argued that the exclusive liability provision of § 7(b) of the Federal Employees' Compensation Act altered the established admiralty rule and precluded any liability of the United States based on payments made to the civil service employee.

The Supreme Court granted certiorari to consider the single issue of whether the historic admiralty rule of divided damages in mutual fault collisions was qualified by the exclusive liability provision of the federal compensation statute. The Court examined the legislative history of the Federal Employees' Compensation Act and found

---

**4.** Stencel's indemnity claim was based upon the laws of Missouri. *Stencel Aero Engineering Corp. v. United States,* 431 U.S. at 668 n.3, 97 S.Ct. at 2056 n.3.

**5.** The Supreme Court has discarded this historical rule of equal damages for wrongdoers in collisions at sea and replaced it with a rule that, to the extent it is possible to allocate fairly degrees of fault, the parties should bear the damages in proportion to their degree of fault. *United States v. Reliable Transfer,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975).

that the Act, originally passed in 1916 was established "to provide federal employees a swift, economical, and assured right of compensation for injuries arising out of the employment relationship, regardless of the negligence of the employee or his fellow servants, or the lack of fault on the part of the United States." *Weyerhaeuser S. S. Co. v. United States*, 372 U.S. at 601, 83 S.Ct. at 928. The purpose of § 7(b), added in 1949 was "to establish that, as between the Government on the one hand and its employees and their representatives or dependents on the other, the statutory remedy was to be exclusive." *Id.* The Court stated further that "[t]here is no evidence whatever that Congress was concerned with the rights of unrelated third parties, much less of any purpose to disturb settled doctrines of admiralty law affecting the mutual rights and liabilities of private shipowners in collision cases." *Id.* Accordingly, the Supreme Court held that "the divided damages rule in mutual fault collisions is unaffected by a statute enacted to limit the liability of one of the shipowners to unrelated third parties." *Id.* at 604, 83 S.Ct. at 930.

■ The Court finds that *Weyerhaeuser* does not apply to the facts in this case. *Weyerhaeuser* involved a United States civil service employee not an active duty serviceman injured while performing his regular duties aboard the ship. Accordingly, the Court in *Weyerhaeuser* did not give any consideration to the rationale of the *Feres* doctrine but considered only the narrow issue of whether § 7(b) of the Federal Employees Compensation Act altered the admiralty rule of damages. In the present case, the injured parties are active duty servicemen who were injured while performing their regular duties aboard the ship. Accordingly, the *Feres* doctrine bars these individuals from suing the United States directly, *see Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); *Beaucondray v. United States*, 490 F.2d 86 (5th Cir. 1974); *Charland v. United States*, 615 F.2d 508 (9th Cir. 1980); and the right of any third party for indemnity from the United States for payments made to these

individuals is limited by the rationale of *Feres. Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977).

In *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665, the Supreme Court applied the *Feres* rationale to the claim of a third party for indemnity against the United States and found that the third-party claim was unavailable for essentially the same reasons that the direct action by the serviceman was barred. In *Stencel* the Court noted that the relationship between the United States and the party seeking indemnity was based on a commercial contract (although Stencel did not have a contract directly with the United States), and that the relationship between the Government and its "suppliers of ordnance" is "distinctively federal in character." In the present case, there is no contractual relationship between the Ionian Glow and the United States. Nevertheless, the Court feels that the rationale of *Feres* applies with equal force to bar the claim of Ionian Glow.

In the present case, the servicemen will recover, if at all, under the Veterans' Benefits Act. One of the essential purposes of the Act is to provide an upper limit of disability that the Government may incur for service-connected injuries. *Stencel Aero Engineering Corp. v. United States*, 431 U.S. at 673, 97 S.Ct. at 2058. To allow Ionian Glow to include any payments made to these servicemen in its provable collision damages of which the Government has agreed to pay 35% would circumvent this limitation thereby frustrating one of the essential purposes of the Act. In addition, to allow these payments as part of Ionian Glow's provable damages would be to permit the situs of the alleged negligence to affect the Government's liability for the service-related injury. The Supreme Court has stated that if it is inappropriate to permit the fortuity of the situs of the alleged negligence to affect the liability of the Government to a serviceman who sustains service-related injuries, it is equally inappropriate to permit that situs to affect

the Government's liability to a third party seeking indemnity. Thus, it would be inconsistent with the *Feres* rationale to hold the Government liable for 35% of these service-related injuries merely because the crew members were injured at sea and not on land.

Although the judicial gloss placed on *Feres* in *Brown v. United States*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), supplies a policy rationale suggesting that the bar to suits for service-related injuries rests on a policy of avoiding litigation that would have a disruptive impact on military discipline and morale, this doctrine has not been read so narrowly. *See Veillette v. United States*, 615 F.2d 505, 507 (9th Cir. 1980). Thus, the fact that the Government has admitted liability for negligence in the present case is not dispositive.

For the reasons stated above, the Court FINDS that the *Feres* doctrine bars the claim of Ionian Glow from including any payments made by it to the injured servicemen in its provable collision damages. Accordingly, the Motion of the Government for Partial Summary Judgment is GRANTED, and the Motion of Ionian Glow for Partial Summary Judgment is DENIED.