659 F.2d 49
 25 Wage & Hour Cas. (BN 145, 63 A.L.R.Fed. 786,
92 Lab.Cas. P 34,074,
29 Cont.Cas.Fed. (CCH) 81,955
 Enock CLARK, Dora Parker, Addington Hamilton, Willie J.
Evans, Ernest Brooks, Johnny Mason, Johnny Smith, Willie
Garvin, Isell Hickman, H. B. McCullum, Herbert Gordon,
Lindsey Oliver, Vernon White, Leon Dublin, Roosevelt James,
Jr., Lawrence Williams, Moses Powell, E. L. Ross, Earl
Waters, Ulyses Daniels, Willie Cotton, William M. Skanes,
Barbara Kay Meeks, Gerania Johnson, David Lee Glover and
Eddie Lee Williams, Plaintiffs-Appellants,
v.
UNIFIED SERVICES, INC., Defendant-Appellee.
 No. 80-5688.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit B*
 Oct. 15, 1981.
 Joseph R. Moss, Cocoa, Fla., Thomas R. Townsend, Jr., Rockledge, Fla., for plaintiffs-appellants.
 Peter Chatilovicz, Washington, D. C., Anita Barondes, Peter Hurtgen, Miami, Fla., for defendant-appellee.
 Appeal from the United States District Court for the Middle District of Florida.
 Before RONEY, KRAVITCH and ANDERSON, Circuit Judges.
 KRAVITCH, Circuit Judge:
 
 
 1
 The question before us is whether the 1972 Amendments to the Service Contract Act of 1965, 41 U.S.C. § 351 et seq., require a successor contractor to recognize the successorship and seniority rights acquired by a predecessor contractor's employees under a collective bargaining agreement with the predecessor. While this question is one of first impression in this circuit, it has, in large part[1], been answered by the D. C. Circuit in Trinity Services, Inc. v. Marshall, 593 F.2d 1250 (D.C.Cir.1978), which held that the Act imposes no such obligations. Appellants, service workers previously employed at Kennedy Space Center who either were hired with less than their earlier seniority or were not rehired by the successor contractor, urge us to reject Trinity, upon which the court below relied in granting summary judgment for defendant, the successor contractor. We decline to do so and affirm.
 
 
 2
 Appellants are twenty-six service workers previously employed by Expedient Services, Inc. (ESI), which held the NASA contract for custodial services at Kennedy Space Center, Cape Canaveral, Florida, until September 1, 1978. On that date, ESI lost the contract because of unsatisfactory performance, and Unified Services, Inc. (USI) assumed it. Appellants are also members of District Lodge 166, International Association of Machinists and Aerospace Workers, AFL-CIO (the union), which represented ESI employees as exclusive bargaining agent.
 
 
 3
 Upon award of the contract, USI accepted applications from all interested ESI employees, and hired 78 of ESI's 98 previous employees. Several,[2] however, were hired for positions of lower grade and/or pay. Since a majority of the employees hired were formerly employed by ESI, USI recognized the union as exclusive bargaining agent. After entering into negotiations for a collective bargaining agreement, USI and the union agreed on a contract. Included in the contract between the union and USI were provisions for seniority and successorship comparable to those in the ESI contract.[3]
 
 
 4
 Appellants brought suit contending, inter alia,[4] that USI's failure to hire all interested former employees of ESI and to grant hired ESI employees seniority rights equal to those they previously enjoyed violated section 353(c) of the Service Contract Act, which requires that a successor contractor grant employees the same wages and fringe benefits as were provided under a predecessor collective bargaining agreement. The district court, relying primarily on Trinity, supra, held that the term "fringe benefits," as used in the Act, does not include successorship and seniority rights, and granted summary judgment for USI. Although the court heard argument on USI's contention that appellants as individual employees lacked standing to press their section 353(c) claim, it did not address that issue in its summary judgment order. While appellants have not addressed that question in their brief, USI urges alternatively that we affirm the judgment on the ground that appellants lacked standing.[5] Since we agree with the district court's holding that seniority and successorship rights are not included within section 353(c)'s preservation of fringe benefits, we will assume, without deciding, that appellants have standing to assert that claim.[6]
 
 
 5
 Section 353(c) prohibits a successor contractor, who contracts to furnish substantially the same services as his predecessor, from paying any service employee under such contract "less than the wages and fringe benefits ... to which such service employees would have been entitled if they were employed under the predecessor contract."[7] As defined in section 351(a)(2), fringe benefits for the purposes of the Service Contract Act:
 
 
 6
 include medical or hospital care, pensions on retirement or death, compensation for injuries or illness resulting from occupational activity, or insurance to provide any of the foregoing, unemployment benefits, life insurance, disability and sickness insurance, accident insurance, vacation and holiday pay, costs of apprenticeship or other similar programs and other bona fide fringe benefits not otherwise required by Federal, State, or local law to be provided by the contractor or subcontractor.
 
 41 U.S.C. § 351(a)(2) (emphasis added).[8]
 
 7
 In essence, appellants argue that to read these provisions as not guaranteeing employees job security and equal seniority with successor contractors will emasculate the purposes of the Act, namely to improve and stabilize working conditions in an industry where competitive bidding provides employers a strong incentive to undercut other employers by reducing labor costs. This they may do by cutting wages, explicitly prohibited by the Act, or by hiring employees with limited experience, thereby allowing them to underbid an incumbent contractor whose employees have acquired greater seniority and who may not terminate such employees without cause.
 
 
 8
 Appellants' argument is persuasive, and were our resolution of the issue based solely on policy considerations we might agree.[9] But the language of the Act, the determination of the Secretary of Labor, and the silence of Congress on this question lead us to conclude that even if strong arguments militate in favor of appellants' stance, the statute must be read otherwise.
 
 
 9
 We reach this conclusion first by examining the language of section 351(a) (2). If successorship and seniority rights are protected "fringe benefits," they are included within the phrase "other bona fide fringe benefits not otherwise required by Federal, State, or local law to be provided by the contractor or subcontractor." We agree with the D. C. Circuit's conclusion in Trinity, supra, that the umbrella phrase does not embrace the rights in question. It is a well-settled principle of statutory construction that where general words follow an enumeration by words of particular and specific meaning, the general words are construed to embrace only subjects similar to those specifically described. See Weyerhaeuser Steamship Co. v. United States, 372 U.S. 597, 600-01, 83 S.Ct. 926, 928, 10 L.Ed.2d 1 (1963). Unlike the fringe benefits specifically enumerated in section 351(a)(2), seniority and successorship rights do not require an employer to incur a present cost or the risk of a future cost. Trinity, supra, at 1257. Moreover, seniority and successorship rights differ from section 351(a)(2)'s specifically enumerated benefits because their precise monetary value cannot be ascertained. They are "incapable of being actualized" because seniority is contingent on employee turnover and successorship depends on contract turnover, neither of which can be accurately predicted. Id. Because seniority and successorship rights differ from the benefits specifically enumerated in these ways, their inclusion within the phrase "other bona fide fringe benefits" would violate the principle of ejusdem generis.
 
 
 10
 In addition to the language of the Act itself, the ruling of the Secretary of Labor persuades us that the Act does not protect the sought-after benefits. In recently promulgated regulations codifying "longstanding policies, rulings and interpretations" of the Act, 46 Fed.Reg. 4320, the Department of Labor provided:
 
 
 11
 The obligation of the successor contractor is limited to the wage and fringe benefit requirements of the predecessor's collective bargaining agreement and does not extend to other items such as seniority, grievance procedures, work rules, overtime, etc.
 
 
 12
 46 Fed.Reg. 4362, codified at 29 C.F.R. 4.163 (1981) (emphasis added).[10] This interpretation, while not binding on us, is entitled to great deference. It should be overturned only if irrational and not reasonably related to the purposes of the legislation. Mourning v. Family Publications Service, Inc., 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973), Thorpe v. Housing Authority of Durham, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). We cannot say that exclusion of seniority and successorship rights from the safeguards Congress chose to provide employees in the custodial services industry is irrational or unreasonable under the legislation. Congress simply went so far and not further. The legislative history buttresses this conclusion.
 
 
 13
 While the House and Senate reports do not specifically mention the question of successorship and seniority rights, they do emphasize that the primary intent of the Act was to provide wage standards protection.
 
 
 14
 Since labor costs are the predominant factor in most service contracts, the odds on making a successful low bid for a contract are heavily stacked in favor of the contractor paying the lowest wages. Contractors who wish to maintain an enlightened wage policy may find it almost impossible to compete for Government service contracts with those who pay wages to their employees at or below the subsistence level. When a Government contract is awarded to a service contractor with low wage standards, the Government is in effect subsidizing subminimum wages.
 
 
 15
 H.R.Rep.No.948, 89th Cong., 1st Sess. 2-3 (1965); S.Rep.No.798, 89th Cong., 1st Sess. 3-4 (1965); (1965) U.S.Code Cong. & Ad.News 3737, 3739. Moreover, one representative's comment during the debate on the 1972 amendments evidences his uncontroverted assumption that the Act does not require successor contractors to hire the predecessor's employees. Congressman Blackburn stated that the obligations enumerated in section 353(c) apply, "even if the successor contractor employs his own work force and does not retain any of the predecessor contractor's employees." 118 Cong.Rec. 17,139 (1972) (emphasis added). Indeed, this interpretation was the subject of subsequent congressional inquiry. In hearings entitled "Problems of Service Contract Act and Protection of Florida Cape Area Workers," NASA's Assistant Administrator for Procurement reminded his audience:
 
 
 16
 It should be kept in mind that, although wages and fringe benefits of service employees are protected under the Act, continued employment of service employees is not protected by the terms of the Act. In other words, the Act is neutral with regard to employment opportunities of service employees and no guarantees are extended that would assure continued employment of service employees with an incumbent contractor or a contractor succeeding an incumbent.
 
 
 17
 Hearings Before the Subcomm. on Federal Spending Practices, Efficiency, and Open Government of the Senate Comm. on Government Operations, 94th Cong., 2d Sess. 3 (1976).
 
 
 18
 In light of this record and Congress's failure to act, either to clarify that the intention of the Act was otherwise, thus correcting the Secretary of Labor's determination, or explicitly to include within the protected benefits of section 353(c) seniority and successorship rights, we cannot accept the position appellants urge. The Service Contract Act simply does not offer the relief sought. Accordingly, the judgment is AFFIRMED.
 
 
 
 *
 Former Fifth Circuit case, Section 9(1) of Public Law 96-452 October 14, 1980
 
 
 [1]
 In Trinity, the court held that a successor contractor need not pay severance pay to employees of the predecessor contractor not hired. The question of whether the successor contractor must hire all previous employees was not raised in the precise form posed here
 
 
 [2]
 Appellants claim that 14 persons were hired in positions of lower grade or pay; appellees place this number at 5. The district court made no finding in this respect
 
 
 [3]
 USI's position is that these provisions provided comparable security for its employees once hired, but made no guarantees to former ESI employees
 
 
 [4]
 Appellants also alleged violations of the National Labor Relations Act, 29 U.S.C. § 185 et seq., Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1866, 42 U.S.C. § 1981. The district court granted summary judgment for defendant USI on all counts; appellants appeal only their claim under the Service Contract Act, 41 U.S.C. § 353
 
 
 [5]
 Briefly, appellee argues that under 41 U.S.C. § 352(b), enforcement of the protective provision of the Service Contract Act is exclusively granted to the Secretary of Labor. Section 352(b) provides that "(i)n accordance with regulations prescribed pursuant to section 353 of this title, the Federal agency head or the Secretary is hereby authorized to carry out the provisions of this section." 41 U.S.C. § 352. Thus, according to appellee, private individuals' sole recourse is to bring a complaint to the Wage and Hour Division of the Department of Labor. Failing that, they may bring suit against the Secretary of Labor or contracting agency for failure to enforce the Act. (This was the route taken by Trinity Services in Trinity Services, Inc. v. Usery, 428 F.Supp. 318 (D.D.C.1976) and Trinity Services, Inc. v. Marshall, 593 F.2d 1250 (D.C.Cir.1978). See n.6 infra.)
 In other settings, courts have held that there is no private cause of action by former employees against a successor contractor. E. g., International Association of Machinists and Aerospace Workers v. Hodgson, 515 F.2d 373 (D.C.Cir.1975); Nichols v. Mower's News Service, Inc., 492 F.Supp. 258 (D.Vt.1980).
 
 
 [6]
 The issue of standing was not present in Trinity. There Trinity Services, Inc. was the incumbent services contractor at both Patrick Air Force Base and Cape Canaveral Air Force Station. Shortly before Trinity's contracts were due to expire, the Air Force filed with the Department of Labor notice of its intention to enter into new contracts. The Department of Labor thereafter issued wage determinations regarding both contracts specifying the minimum wages and fringe benefits to be included in all contract bids. Excluded from the Secretary of Labor's determinations were a severance pay provision included in Trinity's current collective bargaining agreements, and a provision requiring that a contractor forego hiring new workers until all qualified employees of the incumbent with accrued seniority rights who had been laid off were offered reemployment. Because of these omissions Trinity sued, inter alia, the Secretary of Labor for declaratory and injunctive relief. By order of the district court, the two service employees unions, originally named as defendants, were realigned as plaintiffs
 The district court, looking primarily toward the purpose of the Service Contract Act, granted plaintiff's requested relief. Trinity Services, Inc. v. Usery, 428 F.Supp. 318 (D.C.1976). In a split decision, the Court of Appeals reversed.
 
 
 [7]
 41 U.S.C. § 353(c) provides in full:
 (c) No contractor or subcontractor under a contract, which succeeds a contract subject to this chapter and under which substantially the same services are furnished, shall pay any service employee under such contract less than the wages and fringe benefits, including accrued wages and fringe benefits, and any prospective increases in wages and fringe benefits provided for in a collective-bargaining agreement as a result of arm's-length negotiations, to which such service employees would have been entitled if they were employed under the predecessor contract: Provided That in any of the foregoing circumstances such obligations shall not apply if the Secretary finds after a hearing in accordance with regulations adopted by the Secretary that such wages and fringe benefits are substantially at variance with those which prevail for services of a character similar in the locality.
 
 
 [8]
 41 U.S.C. § 351(a)(2) provides in full:
 (a) Every contract (and any bid specification therefor) entered into by the United States or the District of Columbia in excess of $2,500, except as provided in section 356 of this title, whether negotiated or advertised, the principal purpose of which is to furnish services in the United States through the use of service employees shall contain the following:
 (2) A provision specifying the fringe benefits to be furnished the various classes of service employees, engaged in the performance of the contract or any subcontract thereunder, as determined by the Secretary or his authorized representative to be prevailing for such employees in the locality, or, where a collective-bargaining agreement covers any such service employees, to be provided for in such agreement, including prospective fringe benefit increases provided for in such agreement as a result of arm's-length negotiations.
 Such fringe benefits shall include medical or hospital care, pensions on retirement or death, compensation for injuries or illness resulting from occupational activity, or insurance to provide any of the foregoing, unemployment benefits, life insurance, disability and sickness insurance, accident insurance, vacation and holiday pay, costs of apprenticeship or other similar programs and other bona fide fringe benefits not otherwise required by Federal, State, or local law to be provided by the contractor or subcontractor. The obligation under this subparagraph may be discharged by furnishing any equivalent combinations of fringe benefits or by making equivalent or differential payments in cash under rules and regulations established by the Secretary.
 
 
 [9]
 We do not agree with appellees' argument that such provision would lock a successor into hiring poorly performing employees, thus perpetuating the very situation that may, as here, have resulted in the previous contractor's loss of the contract unsatisfactory performance. A successor contractor could refuse to hire an employee on the same basis as it could terminate an employee, i. e., good cause. There may, however, be a countervailing interest in permitting an employer freedom to choose its own work force. See NLRB v. Burns International Security Services, Inc., 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972); Howard Johnson Co. v. Detroit Local Joint Executive Bd., 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974)
 
 
 [10]
 While this regulation postdated the Trinity decision, the Secretary of Labor had taken the position in that case that "those portions of the seniority provisions which might require a successor to hire a predecessor's employees, and which designate a precise system for hirings and lay offs are not, in themselves fringe benefits within the meaning of the Act." Brief for appellant at 39, Trinity, supra