511 U.S. 222 (1994)
BOCA GRANDE CLUB, INC.
v.
FLORIDA POWER & LIGHT CO., INC.
No. 93-180.
United States Supreme Court.
Argued January 11, 1994.
Decided April 20, 1994.
CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT
Stevens, J., delivered the opinion for a unanimous Court.
David F. Pope argued the cause for petitioner. With him on the briefs was Jack C. Rinard. 
Ronald J. Mann argued the cause for the United States as amicus curiae urging affirmance. With him on the brief were Solicitor General Days, Assistant Attorney General Hunger, Deputy Solicitor General Kneedler, and Richard A. Olderman. 
Stuart C. Markman argued the cause for respondent. With him on the briefs were James E. Felman, C. Steven Yerrid, and Christopher S. Knopik.[*]
Justice Stevens, delivered the opinion of the Court.
We granted certiorari, 509 U. S. 953 (1993), to consider the question whether, in an action against several alleged joint *223 tortfeasors under general maritime law, the plaintiff's settlement with one defendant bars a claim for contribution brought by nonsettling defendants against the settling defendant. Because the opinion that we announce today in McDermott, Inc. v. AmClyde, ante, p. 202, adopts the proportionate share rule, under which actions for contribution against settling defendants are neither necessary nor permitted, we vacate the judgment of the Court of Appeals and remand the case for further proceedings consistent with that opinion.
It is so ordered. 
NOTES
[] Warren B. Daly, Jr., and George W. Healy III filed a brief for the Maritime Law Association of the United States as amicus curiae urging reversal.
[] "AmClyde," formerly known as "Clyde Iron," is a division of AMCA International, Inc.
[] The three sling defendants, sometimes also described as the "settling defendants," were International Southwest Slings, Inc.; British Ropes, Ltd.; and Hendrik Veder B. V.
[] Section 1333(1) provides: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."
[] McDermott's motive in taking upon itselfresponsibility for the sling defendant's fault is obscure. Perhaps it thought doing so would prevent a contribution action against the sling defendants and thus relieve McDermott of its indemnity obligation.
[] The special interrogatory treated McDermott and the sling defendants as a single entity and calledfor a percentage figure that covered them both. This combined treatment reflected McDermott's acceptance of responsibility for the damages caused by the sling defendants.
[] The trial judge also noted that "[t]ohold as the defendants request would result in the settling defendants, who were at the most thirty percent (30%) responsible for the accident (no separate contributory negligence, if any, finding was made as to McDermott), paying One Million Dollars ($1,000,000.00) while the defendants who insistedon a trialand were found to be seventy percent (70%) liable would pay Four Hundred and Seventy Thousand Dollars ($470,000.00) between them. That is unjust . . . ."App. to Pet. for Cert. A-52 to A-53.
[] See, e. g., Longshore and Harbor Workers' Compensation Act, 33 U. S. C.§§ 901-950; Death on the High Seas Act, 46 U. S. C.§§ 761-768; Public Vessels Act, 46 U. S. C. §§ 781-790.
[] The three alternatives sketched by the ALI correspond to three detailed model Acts proposed by the National Conference of Commissioners on Uniform State Laws. Uniform Contribution Among Tortfeasors Act (1939 Act), 12 U. L. A. 57-59 (1975) (ALI Option 1); Revised Uniform Contribution Among Tortfeasors Act (1955 Revised Act), id., at 63-107 (ALI Option 2); Uniform Comparative Fault Act (1977 Act), 12 U. L. A. 45-61 (1993 Supp.) (ALI Option 3). Although the three ALI options are the most plausible, a number of others are possible. So, for example, in addition to arguing for the pro tanto rule, respondents suggest that we consider a rule that allows the nonsettling defendants to elect before trial either the pro tanto or the proportionate share rule. Although respondents claim support for their proposal in Texas and New York statutes, those statutes enact regimes quite different from that proposed by respondents. Texas Civ. Prac. & Rem. Code Ann. § 33.012(b) (Supp. 1994) (nonsettling defendant can choose pro tanto rule or reduction of damages by fixed proportion of total damages without regard to relative fault); N. Y. Gen. Oblig. Law § 15-108 (McKinney 1989) (pro tanto rule or proportionate share rule, whichever favors nonsettling defendants). We are unwilling to consider a rule that has yet to be applied in any jurisdiction.
[] In this opinion, we use the phrase "proportionate share approach" to denote ALI Option 3. We have deliberately avoided use of the term "pro rata," which is often used to describe this approach, see, e. g., T. Schoenbaum, Admiralty and Maritime Law § 4-15, p. 153 (1987), because that term is also used to describe an equal allocation among all defendants without regard to their relative responsibility for the loss. See In re Masters Mates & Pilots Pension Plan and IRAP Litigation, 957 F. 2d 1020, 1028 (CA2 1992); Silver, Contribution Under the Securities Acts: The Pro Rata Method Revisited, 1992/1993 Ann. Survey Am. L. 273. Others have used different terms to describe the approach adopted here. Ibid. ("proportionate method"); Kornhauser & Revesz, Settlements Under Joint and Several Liability, 68 N. Y. U. L. Rev. 427, 438 (1993) ("apportioned share set-off rule"); Polinsky & Shavell, Contribution and Claim Reduction Among Antitrust Defendants: An Economic Analysis, 33 Stan. L. Rev. 447 (1981) ("claim reduction").
[] It might be thought that, since AmClyde is immune from damages, River Don's liability should be $1.47 million (McDermott's $2.1 million loss minus 30% of $2.1 million, the share of liability attributed to the settling defendants and McDermott). This calculation would make River Don responsible not only for its own 38% share, but also for the 32% of the damages allocated by the jury to AmClyde. This result could be seen as mandated by principles of joint and several liability and by Edmonds v. Compagnie Generale Transatlantique, 443 U. S. 256 (1979). See infra, at 220-221. Nevertheless, McDermott has not requested that River Don pay any more than its 38% share of the damages. AmClyde is immune from damages because its contract with McDermott provided that free replacement of defective parts "shall constitute fulfillment of all liabilities. . . whether based upon Contract, tort, strict liability or otherwise." 979 F. 2d 1068, 1075 (CA5 1993) (emphasis omitted). The best way of viewing this contractual provision is as a quasi settlement in advance of any tort claims. Viewed as such, the proportionate credit in this case properly takes into account both the 30% of liability apportioned to the settling defendants (and McDermott) and the 32% allocated to AmClyde. This leaves River Don with $798,000 or 38% of the damages.
[] For simplicity, we ignore AmClyde, which was found to be immune from damages by the Court of Appeals. Id., at 1075-1076. No party appeals that holding. Although AmClyde spent a considerable amount replacing the defective hook, River Don does not argue that that amount should be included in the calculation of its liability.
[] Whether the Court of Appeals correctly applied the pro tanto rule in the context of McDermott's acceptance of responsibility for the sling damages is a difficult question. Fortunately, since we adopt the proportionate share approach, we need not answer it.
[] Uniform Contribution Among Tortfeasors Act § 4 (1955 Revised Act), Commissioners' Comment, 12 U. L. A. 99 (1975); Kornhauser & Revesz, 68 N. Y. U. L. Rev., at 474; Polinsky & Shavell, 33 Stan. L. Rev., at 458-459, 462, 463. This argument assumes, in accordance with the law of most jurisdictions, that a settling defendant ordinarily has no right of contribution against other defendants. See Uniform Contribution Against Tortfeasors Act § 1(d), 12 U. L. A. 63 (1975); Uniform Comparative Fault Act § 4(b), 12 U. L. A. 54 (1993 Supp.); Restatement (Second) of Torts § 886A(2) and Comment f, pp. 337, 339 (1977).
[] Suppose, for example, that a plaintiff sues two defendants, each equally responsible, and settles with one for $250,000. At trial, the nonsettling defendant is found liable, and plaintiff's damages are assessed at $1 million. Under the pro tanto rule, the nonsettling defendant would be liable for 75% of the damages ($750,000, which is $1 million minus $250,000). The litigating defendant is thus responsible for far more than its proportionate share of the damages. It is also possible for the pro tanto rule to result in the nonsettlor paying less than its apportioned share, if, as in this case, the settlement is greater than the amount later determined by the court to be the settlors' equitable share. For a more complex example illustrating the potential for unfairness under the pro tanto rule when the parties are not equally at fault, see Kornhauser & Revesz, 68 N. Y. U. L. Rev., at 455-456 (pro tanto rule can lead to defendant responsible for 75% of damages paying only 37.5% of loss, while 25% responsible defendant pays 31.25%).
[] In re Masters Mates & Pilots Pension Plan and IRAP Litigation, 957 F. 2d 1020 (CA2 1992); Miller v. Christopher, 887 F. 2d 902, 906-907 (CA9 1989); Tech-Bilt, Inc. v. Woodward-Clyde & Assocs., 38 Cal. 3d 488, 698 P.2d 159 (1985);Uniform ContributionAmong Tortfeasors Act § 4 (1955 Revised Act),12 U.L. A.98 (1975)(enacted as statute law in 19 States, 12 U. L. A. 81 (1993 Supp.)).
[] Tech-Bilt, Inc., 38 Cal.3d, at 499, 698P. 2d, at 166; Miller, 887 F. 2d, at 907;In re Masters, 957F.2d,at 1031; but see Noyes v. Raymond, 28 Mass. App. 186,190,548 N.E. 2d 196,199 (1990)(judge in good-faith hearing should not scrutinize the settlement amount, but merely look for "collusion, fraud, dishonesty, and other wrongful conduct").
[] Franklin v. Kaypro Corp., 884 F. 2d 1222, 1230 (CA9 1989).
[] Tech-Bilt, 38 Cal. 3d, at 500, 698 P. 2d, at 167 ("[T]he determination of good faith can be made by the court on the basis of affidavits"); TBG Inc. v.Bendis, 811 F. Supp.596, 605, n.17,608 (Kan.1992) (no"mini trial" required; settlement amount is "best available measure of liability").
[] Suppose again, as in footnote 14, that plaintiff sues two equally culpable defendants for $1 million and settles with one for $250,000. At the good-faith hearing, the settling defendant persuasively demonstrates that the settlement is in good faith, because it shows that its share of liability is 50% and that plaintiff has only a 50% chance of prevailing at trial. The settlement thus reflects exactly the settling defendant's expected liability. If plaintiff prevails at trial, the nonsettling defendant will again be liable for 75% of the judgment even though its equitable share is only 50%. The only way to avoid this inequity is for the judge at the good-faith hearing to disallow any settlement for less than $500,000, that is, any settlement which takes into account the uncertainty of recovery at trial. Such a policy, however, carries a grave cost. It would make settlement extraordinarily difficult, if not impossible, in most cases. As a result, every jurisdiction that conducts a good-faith inquiry into the amount of the settlement takes into account the uncertainty of recovery at trial. Miller, 887 F. 2d, at 907-908; Tech-Bilt, 38 Cal. 3d, at 499, 698 P. 2d, at 166; TBG Inc., 811 F. Supp., at 600.
[] Illustration of the beneficial effects of the pro tanto rule requires substantial simplifying assumptions. Suppose, for example, that all parties are risk neutral, that litigation is costless, and that there are only two defendants. In addition, suppose everyone agrees that the damages are $100, that if one defendant is found liable, the other one will also be found liable, and that if the defendants are liable, each will be apportioned 50% of the damages. And suppose, as frequently happens, that the plaintiff is more optimistic about his chances of prevailing than the defendants: Plaintiff thinks his chances of winning are 60%, whereas the defendants think the plaintiff's chances are only 50%. In this case, under the proportionate setoff rule, settlement is unlikely, because the plaintiff would be reluctant to accept less than $30 (60% times 50% of $100) from each defendant, whereas neither defendant would be disposed to offer more than $25 (50% times 50% of $100). On the other hand, under the pro tanto rule, the plaintiff would be willing to accept a $25 settlement offer, because he would believe he had a 60% chance of recovering $75 ($100 minus the $25 settlement) at trial from the other defendant. Accepting the $25 settlement offer would give the plaintiff an expected recovery of $70 ($25 plus 60% of $75), which is more than the $60 (60% of $100) the plaintiff would expect if he went to trial against both defendants. For a more thorough discussion of settlement under the pro tanto rule, see Kornhauser & Revesz, 68 N. Y. U. L. Rev., at 447-465.
[] See H. Hovenkamp, Economics and Federal Antitrust Law § 14.6, p. 377 (1985), summarizing Easterbrook, Landes, & Posner, Contribution among Antitrust Defendants: A Legal and Economic Analysis, 23 J. Law & Econ. 331, 353-360 (1980).
[] Less than 5% of cases filed in federal court end in trial. Administrative Office of United States Courts, Annual Report of the Director, 186, 217 (1991) (Of 211,713 civil cases terminated between July 1, 1990, and June 30, 1991, only 11,024 involved trials). Although some of the nontrial terminations are the result of pretrial adjudications, such as summary judgments and contested motions to dismiss, the bulk of the nontrial terminations reflect settlements. Kritzer, Adjudication to Settlement: Shading in the Gray, 70 Judicature 161, 163-164 (1986).
[] United States v. Reliable Transfer Co., 421 U. S. 397, 408 (1975) ("Congestion in the courts cannot justify a legal rule that produces unjust results in litigation simply to encourage speedy out-of-court accommodations").
[] An excellent discussion of the effect of the various rules on settlement is Kornhauser & Revesz, Settlement Under Joint and Several Liability, 68 N. Y. U. L. Rev. 427 (1993). After considering the effects of strategic behavior, litigation costs, and whether the probabilities of the defendants' being found liable at trial are "independent" or "correlated," they conclude that "neither rule is consistently better than the other." Id., at 492. In addition, in comparing the pro tanto and proportionate share rules, they generally assume that the pro tanto rule is implemented without goodfaith hearings. Good-faith hearings, however, "mak[e] the pro tanto setoff rule relatively less desirable from the perspective of inducing settlements than the apportioned [i. e. proportionate] share set-off rule." Id., at 476. Moreover, the pro tanto rule contains a unique disincentive to settlement in cases, like this one, in which the settlement covers more items of damage than the litigated judgment. McDermott argued that the settlement covered damage both to the crane and to the deck, whereas the judgment against River Don related only to the deck. The Court of Appeals refused to apportion the settlement between deck damages and crane damages and to credit River Don only with that portion related to deck damages. 979 F. 2d, at 1080. This refusal to apportion will greatly discourage settlement, because parties like McDermott will be unable to recover their full damages if they settle with one party.
[] By referring to the relative fault of the parties, we express no disapproval of the lower courts' use of relative "causation" to allocate damages. See 979 F. 2d, at 1081-1082.
[] A further cost of the pro tanto rule would be incurred in cases in which the settlement covered more items of damage than the judgment. See n. 24, supra. To avoid discouraging settlement, the judge would have to figure out what proportion of the settlement related to damages covered by the judgment and what percentage related to damages covered only by the settlement. Presumably this allocation would be done by comparing the settling defendant's liability for the damages to be covered by the judgment to those not so covered. Ascertaining the liability of a settling defendant for damages not otherwise litigated at trial would be at least as difficult as ascertaining an absent defendant's responsibility for damages already the subject of litigation.
[] Conway v. Pottsville Union Traction Co., 253 Pa. 211, 97 A. 1058 (1916); Rogers v. Cox, 66 N. J. L. 432, 50 A. 143 (1901); W. Prosser, Law of Torts § 109, pp. 1105-1111 (1941).
[] W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 49, pp. 333-334 (5th ed. 1984); Restatement (Second) of Torts § 885(1), Comment b, at 334.
[] Rose v. Associated Anesthesiologists, 501 F. 2d 806, 809 (CADC 1974); Sanders v. Cole Municipal Finance, 489 N. E. 2d 117, 120 (Ind. App. 1986).
[] See 4 F. Harper, F. James, & O. Gray, Law of Torts § 25.22 (2d ed. 1986) (injured person can recover full damages from tortfeasor, even when he has already been made whole by insurance or other compensatory payment); Restatement (Second) of Torts § 920A(2) (1977). The one satisfaction rule once applied to compensatory payments by nonparties as well, thus preventing or diminishing recovery in many situations in which the collateral benefits rules would now permit full judgment against the tortfeasor. W. Prosser, Law of Torts § 109, pp. 1105-1107 (1941).
[] Uniform Comparative Fault Act § 2, Comment "Joint and Several Liability and Equitable Shares of the Obligation," 12 U. L. A. 51 (1993 Supp.).
[] See also Uniform Comparative Fault Act § 2 (reallocation of insolvent defendant's equitable share), id., at 50.
[*] Briefs of amicus curiae urging reversal were filed for the Maritime Law Association of the United States by Warren B. Daly, Jr., and George W. Healy III; and for the National Association of Securities and Commercial Law Attorneys by William S. Lerach, Leonard B. Simon, and Kevin P. Roddy.

Kathryn A. Oberly, Carl D. Liggio, Jon N. Ekdahl, Harris J. Amhowitz, Howard J. Krongard, Edwin D. Scott, and Eldon Olson filed a brief for Arthur Andersen & Co. et al. as amici curiae urging affirmance.