677 So.2d 880 (1996)
FLORIDA POWER & LIGHT COMPANY, Appellant/Cross-Appellee,
v.
Stephanie J. POLACKWICH, as Personal Representative of the Estate of Jonathan Richards, and Alan S. Polackwich, Sr., as Personal Representative of the Estate of Robert J. Polackwich, Appellees/Cross-Appellants.
Nos. 93-03560, 93-03572.
District Court of Appeal of Florida, Second District.
June 5, 1996.
Rehearing Denied August 14, 1996.
*881 Stuart C. Markman, James E. Felman, and Susan H. Freemon of Kynes, Markman & Felman, P.A., Tampa; and C. Steven Yerrid and Christopher S. Knopik of Yerrid, Knopik & Valenzuela, P.A., Tampa, for Appellant/Cross-Appellee.
Searcy, Denney, Scarola, Barnhart & Shipley, P.A., West Palm Beach, and Russell S. Bohn of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for Appellees/Cross-Appellants.
ALTENBERND, Judge.
Florida Power & Light Company (FP & L) appeals a judgment in favor of the estates of Jonathan Richards and Dr. Robert J. Polackwich. The estates cross-appeal. Although the trial court's rulings were consistent with applicable law at the time of trial, we conclude that two changes in federal law on issues adequately preserved by the two parties require this case to be retried on all issues except for the liability of FP & L and the determination that Dr. Polackwich and Jonathan Richards were involved in a joint enterprise that was comparatively negligent to some degree.
On April 23, 1988, Dr. Polackwich rented a catamaran at the Boca Grande Club (the Club) and went sailing with his 19-year-old stepson, Jonathan Richards. While they were sailing in the waters near the Club, the catamaran came in contact with a power line. Both men died in the accident.
The estates sued the alleged manufacturers of the catamaran for negligent design and manufacture. They also sued Boca Grande Club, Inc., as the owner and lessor of the vessel, and FP & L, as the owner of the power line. Prior to trial, the Club settled for $225,000 and the manufacturers settled for $200,000. The jury returned sizeable verdicts for the two estates, but determined that Dr. Polackwich and Jonathan were engaged in a joint enterprise that was 35% comparatively negligent. The trial court reduced the estates' judgments by that percentage.
If Dr. Polackwich and Jonathan had rented bicycles from the Club and had come in contact with a nearby power line, this would have been a typical personal injury action governed by state law. Because the pair rented a sailboat for use in the adjacent waters, it is a federal maritime action. Thus, the available damages and the effect of the settlements are issues controlled by federal law.
*882 The trial court accepted FP & L's argument concerning the appropriate damages and followed precedent from the Second and Fifth Circuits applying a federal remedy and precluding an award for nonpecuniary damages. After the oral argument in this appeal, the United States Supreme Court decided Yamaha Motor Corp., U.S.A. v. Calhoun, ___ U.S. ___, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996). Yamaha holds that, in a maritime wrongful death case not otherwise governed by federal statute, if the decedent is not a seaman, longshore worker, or other maritime tradesperson, state wrongful death remedies serve as the damages for the federal claim. Accordingly, the damages for both estates in this case should have been awarded under the Florida Wrongful Death Act, which includes nonpecuniary damages. §§ 768.16-.27, Fla.Stat. (1987). We must reverse and remand for a new trial on all damage issues, including Mrs. Polackwich's consortium claim.
Concerning the effect of the settlements by the other defendants, the trial court accepted the estates' argument that only FP & L should appear on the verdict form, and that the settlements should result in a pro tanto setoff. This ruling was consistent with a ruling in a related federal case. See Boca Grande Club, Inc. v. Polackwich, 990 F.2d 606 (11th Cir.1993). Following the trial in this case, the United States Supreme Court rejected the pro tanto setoff method for handling settlements by other defendants in admiralty cases and adopted the proportionate share approach. McDermott, Inc. v. AmClyde, 511 U.S. 202, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994). See also Boca Grande Club, Inc. v. Florida Power & Light Co., 511 U.S. 222, 114 S.Ct. 1472, 128 L.Ed.2d 165 (1994) (reversing the Eleventh Circuit's decision cited above). Because the other defendants were not on the verdict form and because the jury's evaluation of proportionate share could affect its decision on the extent of comparative negligence, we must require a new trial on all remaining issues, except for the determination of liability against FP & L and the determination that the joint enterprise was comparatively negligent to some degree.
The estates also argue that the trial court erred in applying the joint enterprise doctrine. We conclude that the trial court correctly submitted this issue to the jury, and that this portion of the verdict is not affected by the other errors. Joint enterprise generally involves the operation of a motor vehicle. See Kane v. Portwood, 573 So.2d 980 (Fla. 2d DCA 1991). Because a car is normally driven by one licensed person, the doctrine is difficult to prove in that context. The record in this case, on the other hand, establishes that Dr. Polackwich and his adult stepson had an express or implied agreement to undertake this sailing adventure. They had a community of interest in the objects and purposes to be accomplished in the undertaking. See Yokom v. Rodriguez, 41 So.2d 446 (Fla.1949). They had equal authority to control the undertaking. Unlike an automobile, the catamaran was being operated by a team of men, neither of whom required an operator's license. Accordingly, we approve the jury's determination that a joint enterprise existed in this case.
Affirmed in part, reversed in part, and remanded for a new trial.
RYDER, A.C.J., and SCHOONOVER, J., concur.