**NORTH AND SOUTH AMERICAN SHIPPING, et al.**

v.

**UNITED STATES of America**

No. CIV.A.03–3053.

United States District Court, E.D. Louisiana.

Jan. 18, 2005.

See also 2004 WL 595091.

Derek Anthony Walker, Ivan Mauricio Rodriguez, Chaffe, McCall, Phillips, Toler & Sarpy, LLP, New Orleans, LA, for Plaintiff.

Fred Turner Hinrichs, U. S. Attorney's Office, Stephen G. Flynn, Washington, DC, for Defendant.

## ORDER AND REASONS

DUVAL, District Judge.

Before the Court is a Motion for Dismissal of Second Amended Complaint (Doc. No. 33) filed by the United States. Oral argument was conducted on January 12, 2005. This case arises out of an incident which occurred on October 30, 2001 aboard the M/V SAKURA I which was owned and operated by Guilford Navigation and North and South American Shipping. (Second Amended Complaint, Amended Par. III). The American Steamship Owners Mutual Protection and Indemnity Association provided protection and indemnity insurance to the M/V SAKURA I and her owners. On the day noted, three individuals, U.S. Customs Senior Inspector Thomas Murray ("Murray"), Captain Maksym Larionov ("Larionov") and A/B Eduard Serdyuk ("Serdyuk") died after entering a sealed cargo hold loaded with a cargo of scrap metal which had created an oxygen deficient atmosphere. The survivors of the decedents filed state court actions against plaintiffs herein, North and South American Shipping, Guilford Navigation, and The American Steamship Owners Mutual Protection and Indemnity Association (hereinafter referred to collectively at "plaintiffs" or

"Vessel Interests"). While plaintiffs denied liability, pursuant to a Judgment Approving Settlement, plaintiffs resolved all claims of the survivors of Larionov and Serdyuk in the state court action. The claims of the survivors of Murray were tried in state court, and a judgment has been entered against plaintiffs herein. Plaintiffs seek in the instant matter indemnification and/or contribution for any payments made to the survivors of Captain Larionov, A/B Serdyuk and Senior Inspector Murray; they also seek judgment for costs incurred in defending the state court actions brought against plaintiffs by the survivors.

In the instant motion, the United States seeks the dismissal of plaintiffs' Second Amended Complaint arguing that:

1. The cause of action for contribution or indemnity arising from the death of Thomas Murray is barred by his status as a federal employee under Federal Employees Compensation Act ("FECA"), 5 U.S.C. §§ 1801, et seq.; and

2. The cause of action for contribution arising from the deaths of Larionov and Serdyuk fails to state a valid claim because plaintiffs have only paid their proportionate share of the survivors' damages based on *Murphy v. Florida Keys Electric Cooperative Association, Inc.*, 329 F.3d 1311, 2003 WL 21040181 (11th Cir.2003). The United States maintains that because plaintiffs in this case did not obtain a release on behalf of the United States, they are precluded from seeking indemnity/contribution from the United States.

Having heard oral argument and having reviewed the pleadings, memoranda, exhibits and the relevant law, the Court finds the motion to have merit.

### Background Facts as Alleged in the Second Amended Complaint

On October 30, 2001, the M/V SAKURA I arrived at the Bayou Steel facility in Gramercy, Louisiana, carrying a cargo of scrap metal/steel scrap from the Dominican Republic. (Amended Paragraph IV). Shortly thereafter, Senior Inspectors Thomas Murray and Ken Thomas ("Thomas")of the United States Customs Service, now known as the Bureau of Customs and Border Protection ("Customs") boarded the vessel to conduct an enforcement boarding/search for stowaways and/or contraband. (Amended Paragraph V). Prior to the vessel's arrival, Senior Inspectors Murray and Thomas received and reviewed a cargo manifest, and they were both fully aware of the type and quantity of cargo loaded in the vessel's holds. (Amended Paragraph VI)

As part of the Customs enforcement boarding, Murray entered one of the vessel's closed/sealed cargo holds, which area is a "permit-required confined space" as defined by 29 C.F.R. § 1910.146 et seq. (Amended Paragraph VII). Further, because the cargo hold was still closed/sealed, the hold was an "oxygen deficient atmosphere" as defined by 29 C.F.R. § 1910.146 et seq. (Amended Paragraph VIII). Murray and Thomas did not have any equipment with them, such as oxygen meters, to test the atmosphere within the "permit-required confined space"/"oxygen deficient atmosphere." They were also not equipped with any self contained breathing apparatuses or other safety equipment. Additionally, they did not have radios, walkie-talkies, or cell phones by which they could remain in contact with each other and with the vessel's crew, while one or both of them were in the hold. (Amended Paragraph IX). Murray did not put on a self contained breathing apparatus, which equipment was readily avail-

able to him aboard the vessel, before entering the hold. He also did not take any measures to ensure that the hold was properly ventilated or had sufficient oxygen content before entering.(Amended Paragraph X)

Murray died almost immediately after entering the hold due to insufficient oxygen within this "permit-required confined space"/"oxygen deficient atmosphere."(Amended Paragraph XI). Although the sequence of events that followed is unclear, plaintiffs submit that, upon information and belief, several minutes after Murray entered the hold, Thomas became concerned because he was not able to make contact with Senior Inspector Murray. Thomas stuck his head inside the access way and yelled to Murray, but there was no response. (Amended Paragraph XII).

Upon information and belief, at some point thereafter, Serdyuk entered the hold in an attempt to rescue Murray. (Amended Paragraph XIII). Upon information and belief, at some point thereafter, Larionov also entered the hold in an attempt to rescue Serdyuk and Murray. (Amended Paragraph XIV). After losing contact with Larionov, Serdyuk, and Murray, Thomas summoned other members of the crew. (Amended Paragraph XV). The crew attempted to assist, but Larionov, Serdyuk, and Murray all died in the hold of asphyxia due to suffocation. (Amended Paragraph XVI).

### State Court Proceedings

As a result of the events of October 30, 2001, the survivors of Larionov, Serdyuk, and Murray filed three separate state court actions against plaintiffs herein for damages in St. John the Baptist Parish.

These state court suits are entitled:

*"Galena Larionov, Individually, as Personal Representative of the Estate of Maksym Larionov, as Natural Tutrix of the Estate of Ivan Maksymovich Lar-ionov and as Natural Tutrix of the Estate of Irina Maksimovna Larionova & Yelena Serdyuk, Individually, as Personal Representative of the Estate of Eduard Serdyuk and as Natural Tutrix of the Estate of Vitoria Eduardivna Serdyuk v. North and South American Shipping, Guilford Navigation, and The American Steamship Owners Mutual Protection and Indemnity Association,"* Civil Action No. 44,423, Division "B";

*"Joan Murray, Individually and as Personal Representative of the Estate of Thomas M. Murray, Deceased v. North and South American Shipping Company, and ABC Insurance Company,"* Civil Action No. 44,572, Division "B"; and

*Tara Murray Holley and Dustin Murray v. North and South American Shipping Company and ABS Insurance Company,"* Civil Action No. 44,573, Division "B".

The state court suits were consolidated, and plaintiffs denied any liability to the survivors of Larionov, Serdyuk, and Murray. However, pursuant to a Judgment Approving Settlement dated December 19, 2003, plaintiffs resolved all claims of the survivors of Larionov and Serdyuk. (Amended Paragraph XVIII). To that end, on January 14, 2004, a First Amended Complaint was filed alleging the settlement of the crew survivors' underlying actions to which a copy of the Judgment Approving Settlement from the state court was attached. The claims of Larionov's survivors were settled for $975,000 and those of Serdyuk were settled for $325,000. In that document, there was a specific reservation of the rights of the plaintiffs in this action (defendants in the state court suit) to seek indemnity and/or contribution from the United States. (Exhibit A to Motion for Dismissal of Second Amended Complaint). Furthermore in the order

language of the Judgment Approving Settlement the Court stated:

IT IS ORDERED ADJUDGED AND DECREED that defendants, North and South American Shipping and Guilford Navigation, as the sole defendants before . the Court in the absence of the United States Government, who as previously ruled cannot be made a defendant in this Court (which ruling is under appeal), are the parties liable to plaintiffs. However, this finding is without prejudice, and with the specific reservation of the rights of defendants to seek indemnity and/or contribution from the Untied States of America through its agency the United States Customs Service, who defendants allege and maintain are at fault and liable for this accident.

(Exhibit A at 2).

However, the survivors of Larionova and Serdyuk apparently confected a Receipt and Release with Indemnity and Reservation of Rights ("Receipt and Release") on December 23, 2003 wherein Larionov and Serdyuk's survivors agreed to accept immediate payment of $475,000 and $147,450 respectively. They then acknowledged in the document that they were receiving less than the full amount of the judgment and would "only receive additional funds *if* the released parties are successful in obtaining funds from the United States Government." The document continues, "If the released parties are not successful, plaintiffs understand that they may receive no additional payments." (Exhibit B to Motion for Dismissal of Second Amended Complaint, ¶ 3.0)

The agreement states:

"Plaintiffs understand and acknowledge that they are receiving less than the full amount of said Judgment and will only receive additional funds *if* the released parties are successful in obtaining funds from the United States Government, which the released parties allege is at fault for the deaths of plaintiffs husbands/ fathers/stepfathers and for consequential damages to plaintiffs. If the released parties are not successful, plaintiffs understand they may receive no additional payments. ." (Id.)

The survivors agreed to cooperate and agreed that the plaintiffs herein (in the document referred to as the defendants), were to receive the first $650,000, plus reimbursement of attorney fees and costs incurred in prosecution of the State Court action and the Federal Court action. Only after those amounts were recovered in the instant suit, would the survivors be entitled to any other funds.

With respect to the claims of the survivors of Senior Inspector Murray, they were tried in state court, and the state court rendered judgment on those claims on December 20, 2004.[1] In a comprehensive opinion, the state court found that plaintiffs herein and the U.S. Customs Service were equally negligent in causing the death of Murray and that he was in no way at fault. Damages in excess of $3 million were ordered to be paid by the plaintiffs to the Murray survivors and to his estate. Again, as the United States was not subject to the jurisdiction of the state court, the entire judgment was rendered against the plaintiffs herein.

### Federal Court Proceedings

Plaintiffs' initial complaint was brought under the Suits in Admiralty Act, 46 U.S.C. § 745 on October 29, 2003, immediately prior to the second anniversary of the accident and the expiration of the statute of limitations thereunder. The crew

---

1. An Amended Judgment was entered on January 7, 2004 correcting a clerical error in the phraseology of the original judgment.

survivors did not file any claim against the United States; indeed, the crew survivors fought all attempts to make the United States a party to this suit since they objected to the Vessel Interests' attempts to have the state court find that the United States was an indispensable party and have the matter transferred to federal court.

A First Amended Complaint was filed on January 14, 2004, informing the Court of the Judgment Approving Settlement, noted above, concerning the crew members' survivors' claim. However, in this filing the Receipt and Release arrangement was not mentioned. The crew survivors signed that agreement on December 23, 2003. The vessel interests did not sign the Receipt and Release until February 5, 2004.

On February 2, 2004, the United States sought the dismissal of claims in the instant suit based on Murray's death as premature as there had been no state court judgment entered at that time that would be the basis for such a claim. The Court granted the motion with the understanding that it would allow the claim to be reurged at the appropriate time.

On July 16, 2004, plaintiffs sought to amend their complaint for a second time, this time seeking to add as additional plaintiffs the survivors of Larionov and Serdyuk ("Crew Survivors"). The magistrate judge denied the motion in a well-reasoned opinion on September 23, 2004. In essence, she found that the potential second amended complaint did not relate back to the original filing herein because the United States did not have fair notice of the Crew Survivors claims against the United States. As the magistrate judge noted, the Crew Survivors could recover the full amount of their damages from the alleged joint tortfeasors, the Vessel Interests. *Transorient Navigators Co., S.A. v. M/S Southwind,* 788 F.2d 288, 294 (5th Cir.1986) which was their apparent course of action until they executed the noted Receipt and Release.

> The original complaint [of the Vessel Interests] notified the United States of the Vessel Interests' claim for indemnity and contribution. It did not notify the United States that the Crew Survivors were pursing their own claims against the Untied States. Because the United States was immune from such claims, there was no notice that legal claims against it existed in the Crew Survivors and were in effect being asserted by them against the Untied States.

(Doc. No.18 at 8). Thus, based on the rationale of *Williams v. United States,* 405 F.2d 234 (5th Cir.1968), leave to amend was denied, and the decision was not appealed.

On November 3, 2004, a Second Amended Complaint was filed restating the initial complaint adding the Murray-based claims. The amendment was done by consent so that this Court could address the legal issues presented herein.

### Specific Allegations against the United States

In the Second Amended Complaint, plaintiffs contend that Customs and its inspectors owed an affirmative duty to the M/V SAKURA I, her owners, and her crew to inspect the vessel for contraband/stowaways in a prudent and workmanlike manner. (Amended Paragraph XIX). Customs also owed an affirmative duty to the M/V SAKURA I, her owners, and her crew to ensure that Customs inspectors were properly trained and equipped to conduct inspections in "permit-required confined spaces" or "oxygen deficient atmospheres" as was routinely required during the course and scope of their employment. (Amended Paragraph XX).

Thus, plaintiffs have alleged that Customs breached the affirmative duties owed to the M/V SAKURA I and her crew in the following respects:

a. Customs failed to institute a confined space entry program as mandated by 29 C.F.R. § 1910.146, *et seq.;*

b. Customs failed to provide its employees, including Senior Inspectors Murray and Thomas, with sufficient training concerning appropriate procedures to be followed when entering confined spaces as required by 29 C.F.R. § 1960.55 and 29 C.F.R. § 1960.59;

c. Customs failed to provide its employees, including Senior Inspectors Murray and Thomas, with sufficient training concerning the possibility of oxygen depletion in vessel cargo holds when carrying certain cargoes, such as scrap metal/steel scrap;

d. Customs failed to provide its employees, including Senior Inspectors Murray and Thomas, with sufficient protective equipment such as self-contained breathing apparatuses and oxygen meters to assist in conducting inspections; and

e. Other acts of negligence to be proven at trial.

Plaintiffs also contend that Senior Inspector Murray and Senior Inspector Thomas breached the affirmative duties owed to the M/V SAKURA I and her crew in the following respects:

f. Failing to abide by the Customs occupational safety and health program in effect at the time of the incident;

g. Failing to follow established guidelines, precautions, procedures, and directives concerning entry into confined spaces that were readily available to them and with which they were or should have been thoroughly familiar, all of which led to the deaths of Senior Inspector Murray, Captain Larionova, and A/B Serdyuk;

h. Failing to conduct the enforcement boarding at issue in a workmanlike and prudent manner and unnecessarily exposing Senior Inspector Murray, A/B Serdyuk and Captain Larionova to dangers within an area under the exclusive custody and control of Customs/Senior Inspector Murray and Senior Inspector Thomas; and

i. Other acts of negligence to be proven at trial.

(Amended Paragraph XXI).

Thus, plaintiffs argue that the negligence and/or want of due care of the United States of America, i.e. Customs and its employees, including but not limited to Murray and Thomas, was the sole cause of the October 30, 2001 incident, as evidenced by numerous citations for "serious" violations issued by the Department of Labor/Occupational Safety and Health Administration against Customs. (Amended Paragraphs XXI and XXII). Thus, plaintiffs seek recovery in this Court for the liability they incurred because the acts and omissions of the United States of America, i.e. Customs and its employees, unnecessarily exposed plaintiffs to full liability to the survivors of Larionova, Serdyuk, and Murray, and plaintiffs have expended considerable time, effort, and money defending themselves against these claims, all of which would have been avoided but for Customs' and its employees' breach of the duties owed to plaintiffs. (Amended Paragraph XXIII).

### Standard for a Rule to Dismiss

When a defendant attacks the complaint because it fails to state a legally cognizable claim, Rule 12(b)(6) provides the appropriate challenge. The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that " 'a complaint should not be dismissed for failure to state a claim unless

it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Ramming v. United States*, 281 F.3d 158 (5th Cir.2001), *citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Fifth Circuit explained:

> Subsumed within the rigorous standard of the *Conley* test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged. *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir.1989). Further, "the plaintiff's complaint is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Securities, Inc.* 94 F.3d 189, 194 (5th Cir. 1996). This is consistent with the well-established policy that the plaintiff be given every opportunity to state a claim. *Hitt*, 561 F.2d at 608. In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th cir.1992). Finally, when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court must examine the complaint to determine whether the allegations provide relief on any possible theory. *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir.1994).

*Id.* at 161–62. The Court will now turn to the Government's contentions.

### Mover's Contentions re: Claims based on Murray's Death

█ As this suit was brought under the Suits in Admiralty Act, 46 U.S.C. app. § 741–752, the United States is liable as a private party would be in the same or similar circumstances. *Walls Indus., Inc. v. United States*, 958 F.2d 69, 70 (5th Cir.1992). Nonetheless, the Government maintains that the cause of action for contribution or indemnity arising from the death of Thomas Murray is barred by his status as a federal employee under Federal Employees Compensation Act ("FECA"), 5 U.S.C. §§ 1801, *et seq.* In particular, § 8116(c) provides:

> The liability of the United States... with respect to the injury or death of an employee is exclusive and instead all other liability of the United States ... to the employee, his legal representative, spouse, dependants, next of kin, and any other person otherwise entitled to recover damages from the United States of the Instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute.

5 U.S.C. § 8116(c). The Government relies on *Walls Industries, Inc. v. United States*, 958 F.2d 69 (5th Cir.1992) (clothing manufacturer sought contribution alleging government negligence where government employee burned and sued clothing manufacturer) for the proposition that there can be no contribution cause of action because it is only available under the general maritime law when joint tortfeasors share common liability to the plaintiff and FECA prevented any tort liability of the government to the employee.

Plaintiffs oppose this contention relying on *Lockheed Aircraft v. United States*, 460 U.S. 190, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983) and *Wallenius Bremen G.m.b.H. v. United States*, 409 F.2d 994 (4th Cir.1969), *cert. denied*, 398 U.S. 958, 90 S.Ct. 2164, 26 L.Ed.2d 542 (1970). Plaintiffs contend that *Lockheed* held that the exclusive liability provision of FECA does not preclude a third-party from seeking indemnity from the Government for the third-party's tort liability to the employee. Plaintiffs fur-

ther maintain that the *Lockheed* court recognized the rationale found in *Bremen* where the United States Court of Appeals for the Fourth Circuit held that FECA' exclusive remedy provision did not bar the claim of a third party vessel owner for indemnity against the federal government for damages paid to an injured federal inspector.

### Lockheed and Walls

In *Lockheed,* a civilian government employee was killed in an airplane crash and the airplane was manufactured by Lockheed. The civilian's estate sued Lockheed, and Lockheed sought indemnification from the United States under the Federal Tort Claims Act. Lockheed settled the administrator's claim and moved for summary judgment in the third-party action. The district court rejected the government's contention that under FECA it was immune from suit and it granted Lockheed's motion for summary judgment. The appellate court reversed the district court finding that § 8116(c) of FECA barred the third-party claim. The Supreme Court reversed the appellate court finding that FECA's exclusive liability provision 5 U.S.C. § 8116(c) does not directly bar a third-party indemnity action against the United States.

The *Lockheed* decision rested in large measure on the previous Supreme Court ruling in *Weyerhaeuser S.S. Co. v. United States,* 372 U.S. 597, 83 S.Ct. 926, 10 L.Ed.2d 1 (1963). In *Weyerhaeuser,* an Army dredge and a vessel owned by Wey-

erhaeuser collided. A federal employee on the Army dredge was injured in the collision. He received compensation under FECA and then filed suit against Weyerhaeuser to recover damages. That lawsuit was settled by Weyerhaeuser which then sought contribution from the Government of that claim in its pursuit of damages form the collision. The Supreme Court had to determine whether the historic admiralty rule of divided damages in mutual fault collisions had been "qualified" by the exclusive liability provision of FECA. The Court found that it had not. It described the rule of divided damages as "a rule of admiralty law which, for more than 100 years has governed with at least equal clarity the correlative rights and duties of two shipowners whose vessels have been involved in a collision in which both were at fault." *Weyerhaeuser,* 372 U.S. at 603, 83 S.Ct. 926. The lynchpin of the decision was that the Court had previously held that this same ancient maritime rule "must prevail over a statutory provision which, like the one involved in the present case, limited the liability of one of the shipowners with respect to an element of damages incurred by the other in a mutual fault collision. *The Chattahoochee,* 173 U.S. 540, 19 S.Ct. 491, 43 L.Ed. 801." *Id.*

In *Lockheed,* the Supreme Court granted *certiorari* to resolve a conflict in the circuits as to whether FECA's exclusive liability provision prohibited third-party claims for contribution or indemnity against the United States.[2] Relying on

---

**2.** The *Lockheed* court noted in granting *certiorari* that the District of Columbia appellate court recognized that it was acting contrary to *Wallenius Bremen G.m.b.H. v. United States,* 409 F.2d 994 (4th Cir.1969), *cert. denied,* 398 U.S. 958, 90 S.Ct. 2164, 26 L.Ed.2d 542 (1970) in finding the FECA bar. In a rather oblique footnote, the Supreme Court then cited a Ninth Circuit case, *United Air Lines, Inc. v. Wiener,* 335 F.2d 379, 402–404 (9th Cir.), *cert. denied,* 379 U.S. 951, 85 S.Ct.

452, 13 L.Ed.2d 549 wherein that court concluded that FECA'S exclusive liability provision does not bar a third-party indemnification action against the United States. That court found nonetheless that the Government was not liable to the third party because there was no underlying tort liability on the Government's part toward the employee, there was not basis for indemnification. *Id.* at 193 n. 3, 103 S.Ct. 1033.

*Weyerhaeuser*, the majority found that Congress did not intend FECA's exclusive liability provision to override the rights of unrelated third parties. *Lockheed*, 460 U.S. at 195, 103 S.Ct. 1033. The Court noted:

> Here Lockheed relies on substantive indemnity law, while the private shipowner in *Weyerhaeuser* relied on the admiralty ·divided damages rule, but this is the same irrelevant distinction. The Federal Tort Claims Act permits an indemnity action against the United States "in the same manner and to the same extent" that the action would lie against " a private individual under like circumstances." 28 U.S.C. § 2674 . . .

*Id.* at 197–198, 103 S.Ct. 1033. The Court further noted, however, that the validity of Lockheed's underlying substantive claim was not before the Court. *Id.* at n. 8, 103 S.Ct. 1033. The Supreme Court concluded:

> The District Court held that Lockheed had a right to indemnity under the governing substantive law but the Court of Appeals did not rule on that question. Accordingly, we do not consider it. We adhere to the decision in *Weyerhaeuser*, and hold only that FECA's· exclusive liability provisions, 5 U.S.C. § 8116(c), does not directly bar a third-party indemnity action against the United States.

*Id.* at 199. Thus, the seminal issue becomes whether there is a claim under the substantive law that the third-party may invoke against the Government.

This approach was recognized by the United States Court of Appeals for the Fifth Circuit in *Walls Indus., Inc. v. United States*, 958 F.2d 69 (5th Cir.1992). In *Walls*, a federal civilian employee was burned in a fire on a United States vessel and her injuries were exacerbated by her clothing, which had been manufactured by Walls Industries, Inc., melting on her skin. The employee sued Walls which paid a

judgment to the employee. Walls then sought contribution or indemnity from the United States based ·on the government's alleged negligence. The district court dismissed the claim finding that Walls could not succeed in its claim because the employee could not sue the United States. The Fifth Circuit recognized that the analysis required under *Lockheed* is to determine whether the third-party plaintiff has a cause of action under the substantive law. *Id.* at 71. *See In re McAllister Towing and Transp. Co.*, 2004 WL 2009330 at *4–5 (E.D.Pa. Sept.9, 2004).

### Substantive Law Causes of Action by Vessel Interests Against the Government

#### 1. Contribution and/or Indemnity as Joint–Tortfeasors

■ While it is clear that the maritime law recognizes a right of contribution between joint tort-feasors, there are important exceptions. *In re McAllister*, 2004 WL 2009330, at *5 (citing *Eagle–Picher Indus., Inc. v. United States*, 937 F.2d 625, 635 (D.C.Cir.1991) as to the right of contribution and *Halcyon Lines v. Haenn Ship Ceiling and Refitting Corp.* 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318, (1952) and *Cooper Stevedoring Co. v. Fritz Kopke, Inc.*, 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974) for the exceptions). *Halcyon* and *Cooper* "clearly establish the rule that there can be no third-party suit against a joint tort-feasor where the tort-feasor has statutory immunity from the first-party plaintiff". *In re McAllister* at *5. As stated by the Fifth Circuit in *Walls*, "[c]ontribution and indemnity are available only if joint tortfeasors share a common liability to the plaintiff. *Simeon v. T. Smith & Son*, 852 F.2d 1421, 1434 (5th Cir.1988), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989)." *Walls*, 958 F.2d at 71; *Robinson v. Coo-*

*per/T. Smith Corp.*, 1989 WL 97922 at *4 (E.D.La.1989).[3]

The *Walls* court stated, "If one tortfeasor is not liable to the plaintiff (e.g. because of a workers' compensation statute), it is not liable for contribution or indemnity either." *Walls*, 958 F.2d at 71. Thus, as discussed in *Walls*, under the substantive law of contribution and indemnity, the Vessel Interests in the instant case have no claim for tort indemnity against the United States. The United States is not liable under FECA with respect to Murray, a federal employee, and thus under the analysis in *Simeon* and *Walls*, it cannot be found liable under this theory of contribution and/or indemnity. As noted by the *In re McAllister* court, "[a]lmost every circuit that has analyzed contribution law for joint tortfeasors", including the Third Circuit, has applied the reasoning in *Cooper*. *See Eagle–Picher Indus., Inc. v. United States*, 846 F.2d 888, 894 (3d Cir.1988) (third-party plaintiffs cannot "accomplish indirectly what federal employees could not accomplish directly"); *Travelers Ins. Co. v. United States*, 493 F.2d 881, 887 (3d Cir.1974); *Walls Indus., Inc. v. United States*, 958 F.2d 69, 71 (5th Cir.1992) [quotation above]; *Eagle–Picher Indus., Inc. v. United States*, 937 F.2d 625, 635 (D.C.Cir. 1991)("In short, *Halcyon* and *Cooper* established that the maritime common law does not allow contribution against a party who holds a statutory immunity from first-party liability").

The *McAllister* court then noted that only the Fourth Circuit has recognized a tort-based indemnity right against a tortfeasor who is immune citing the aforementioned *Wallenius Bremen* case. In

*Wallenius Bremen*, a German shipowner who settled a claim brought against it by a federal employee, a grain inspector who had fallen off of an accommodation ladder, sought indemnity from the Government alleging that the employee was in such a physical condition that the United States should have known that he could not perform his duties with safety to himself and others and that his physical infirmities had caused on contributed to his fall. *Wallenius Bremen*, 409 F.2d at 995.

The Fourth Circuit found that the suit was not per se barred by the Federal Employees' Compensation Act under its "exclusive remedy provision." The court noted that "indemnity" in law of torts is name given to determination of primary and secondary liability and unlike contribution, indemnity is shifting entire loss to another who ought to bear it because he expressly or impliedly agreed to do so, or his fault if primary and relatively more grievous, and other's fault is passive or constructive or vicarious or insulated. The appellate Court relied on *Weyerhaeuser SS Co. v. United States*, 372 U.S. 597, 83 S.Ct. 926, 10 L.Ed.2d 1 (1963) which was reaffirmed in *Lockheed*. The *Wallenius Bremen* court stated:

> But we are unable to see why in addition to breach of duty there must be indemnitor's liability to the injured party. If the purpose of indemnity is to relieve the relatively innocent wrongdoer and shift the burden to one who conduct is more blameworthy, the fact that the latter has a personal defense if sued by the injured person would seem to be irrelevant., See 1 Harper & James, Torts § 10.2 at 718 (to same effect in the

---

**3.** The Court recognizes that the facts of *Robinson* are distinguishable from the instant case in that the vessel owner in this instance is seeking contribution, as opposed to the stevedore in *Robinson*. Nonetheless, from a delictual standpoint, the duty breached by the Government must cause injury to the ship or its crew in order for there to be tort indemnity in this case. Otherwise, the indemnity sought is indeed derivative-arising from the injury to the Government's own employee.

context of contribution between joint tort-feasors).

*Wallenius Bremen,* 409 F.2d at 998. The *Wallenius Bremen* court did not address the applicability of *Halcyon* or *Cooper* and the concept in the maritime law that does not allow contribution against a party who holds statutory immunity from first-party liability. It simply remanded the matter to the district court to consider and determine whether the plaintiff may be entitled to recover under any theory advanced: (1) a strict tort indemnity theory; (2) a theory of implied warranty or contract of indemnity said to arise from the conduct of the United States in requiring the ship to submit to agricultural inspection and (3) an independent tort theory based upon an alleged breach of duty of care not to the harmed government employee but to the ship. *Wallenius Bremen,* 409 F.2d at 995.

In light of *Walls* and the foregoing analysis, this Court likewise must reject the applicability of *Wallenius Bremen. Bremen* predates the *Walls* and *Lockheed* and thus is suspect. In addition, it does not specifically find any one of the three theories of recovery mentioned applicable; instead, as noted, it remanded the case to the district court to examine whether the plaintiff would be entitled to recover under a theory of tort indemnity, a theory of implied contact to indemnify or a theory of an independent tort. *Wallenius Bremen,* 409 F.2d at 998–99. While *Lockheed* cites to *Bremen* for the proposition that § 8116(c) was "intended to govern only the rights of employees, their relatives, and people claiming through or on behalf of them. These are the only categories of parties who benefit from the 'quid pro quo' compromise that FECA adopts," *Lockheed,* 103 S.Ct. at 1037–38, the Fifth Circuit's interpretation of *Lockheed* in *Walls* mandates this Court find joint-tortfeasor indemnity and/or contribution unavailable to the Vessel Interests.

Furthermore, as to any "independent" delictual duty to ensure that its Customs inspectors were properly trained and equipped to inspect the vessel, that duty would run to indemnify harm cause to the ship and/or its crew. Such duty, if any, is derivative of that owed by the Government to Murray, its own employee. Obviously, the claims against the Government based on the deaths of the two crew members are not barred. Indeed, the Government has not urged any such a result.

### 2. *Causes of Action in Contract*

■ There has been no evidence presented that there is any written or oral agreement by the Government to indemnify the Vessel Interests for any defalcation on its part causing the injury to Murray, thus there is no expressed contractual indemnity. Nonetheless, plaintiffs herein claim that because the Vessel Interests were forced to submit to an enforcement inspection for contraband and stowaways by Customs, the United States owed plaintiffs an affirmative duty to ensure that the vessel inspection was performed in a prudent/workmanlike manner. This argument fails as well.

As this Court noted previously:

The Fifth Circuit in *Employers Ins. of Wausau v. Suwannee River Spa Lines, Inc.,* 866 F.2d 752, 763 n. 14 (5th Cir. 1989) specifically noted that admiralty law recognizes an implied warranty of workmanlike service. Indeed, this implied warranty is one which means that "the obligor in a service contract has a duty to perform his or her task with reasonable care, skill, and diligence. Thus the [warranty of workmanlike performance] is a legal 'construct' that was originally rooted in the concept of *negligence."* T. Shoenbaum, 1 *Admiralty and the General Maritime Law,* § 58 at 190 (2d ed.1994). Nonetheless, a [war-

ranty of workmanlike performance] is one that by its nature arises in contract. *Caribbean Bulk Carriers, Ltd. v. Motor-Services Hugo Stamp., Inc.,* 1996 WL 210716 (E.D.La. April 26, 1996). *See Ensco Marine Co. v. Bird–Johnson Co.,* 2004 WL 2984338 (E.D.La. Dec.15, 2004). However, in this case, there was no "service contract". The services performed were required by law to be executed by the Government. This action by the Government is not a "service" to the ship provided by contract. The ship did not request the service; the Government in essence is acting as a border patrol agent much like it does on land at its land-based border with Mexico and Canada. Thus, this activity does not fit into the traditional realm of the warranty of workmanlike performance and the Court will not extend this legal concept in such a manner having neither been provided with any legal support for its extension, nor finding any legal precedent through its own efforts. Thus, the Motion for Dismissal shall be granted in this regard.

### *Mover's Contentions re: Claims based on Crewmen's Deaths*

▌ The Government contends that regardless of the merits of plaintiffs' claims for contribution with regard to the deaths of Larionov and Serdyuk based on the Government's alleged negligence in training and equipping Murray or Murray's own disregard for his own safety, plaintiffs herein are not entitled to seek contribution in tort from the United States because of the settlement they confected with the Crew Survivors. Relying on *McDermott v. AmClyde,* 511 U.S. 202, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994) and its application in *Murphy v. Florida Keys Electric Cooperative Association, Inc.,* 329 F.3d 1311, 2003 WL 21040181 (11th Cir.2003), the Government contends that a settling defendant cannot bring a suit for contribution against a potential non-settling defendant who was not released from liability to the plaintiff by the settlement agreement. The United States maintains that because plaintiffs in this case-the Vessel Interests did not obtain a release on behalf of the United States, they are precluded from seeking indemnity and/or contribution from the United States.

Plaintiffs oppose the motion based on their contention that the Government should not be considered a "non-settling defendant" as that term is used in *AmClyde* and *Florida Keys* because the United States could not be made a defendant in the state court proceedings as evidenced by plaintiffs' failed attempt at so doing, the recitations in the Judgment Approving Settlement and the Receipt and Release. Plaintiffs herein contend that if the United States could not be a defendant in the state court action, then a release of it from liability in the state court action would not accomplish anything. Furthermore, plaintiffs contend that they have "clearly paid their share of damages and that of the truly culpable entity", the United States, and they are entitled to recover.

*AmClyde* established the proportionate share rule in resolving damage allocation in maritime cases. Cases subsequent to *AmClyde* have held that the settling defendant is not liable for contribution or indemnity. *Boca Grande Club, Inc. v. Florida Power & Light Co., Inc.,* 511 U.S. 222, 114 S.Ct. 1472, 128 L.Ed.2d 165 (1994). This rationale is based upon the premise that a non-settling defendant will only be exposed at trial to its proportionate share of damages. Likewise, this rationale should apply to the right of a settling defendant to obtain contribution and/or indemnity from a non-settling defendant. The settling defendant is assumed to settle for its proportionate share; therefore, there should be no need or reason to seek

contribution or indemnity from the non-settling defendant.

In the event a settling defendant had this right, it could seek contribution and indemnity from a non-settling defendant if its settlement was for more than the Court ultimately allocated. This result flies in the face of the holding in *AmClyde*. Moreover, since the settling defendant is not subject to contribution and indemnity, likewise it should not have the right to seek it. This rationale was observed and applied in *Florida Keys*, a case which issued on May 9, 2003, more than seven months before the Judgment of Settlement was entered on December 19, 2003, and almost nine months before the Receipt and Release were finally executed by the vessel interests on February 5, 2004.

In *Florida Keys*, Brendan and Steven Murphy were injured when riding in a boat skippered by Raymond Ashman, the boat ran into n electrical pole abutment support structure owned by Florida Keys. Brendan was killed, Steven and Raymond were injured. The Murphys sued Florida Keys, but did not sue Ashman. Florida Keys third-partied Ashman and Ashman counterclaimed against Florida Keys for his injuries. Florida Keys settled with the Murphys but did not obtain a release for Ashman's liability to them. Ashman moved for summary judgment against Florida Keys on its third-party contribution claim because of the failure to obtain a release for them in the settlement.

*Florida Keys* analysis relies on the appellate court's reading and extension of *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994), where as previously noted the Supreme Court specifically rejected the *pro tanto* apportionment of between settling and nonsettling tortfeasors in admiralty cases by holding that the proportionate share approach applies. "Under the proportionate share approach adopted in *McDermott*, if at least one defendant does not settle with the plaintiff and the case goes to trial, the amount of damages and the percentage of liability attributable to each tortfeasor is determined at trial, and any nonsettling defendant is responsible for only the proportion of the total damages attributed to it in the verdict." *Florida Keys*, 329 F.3d at 1314.

The *Florida Keys* court stated:

Allowing Florida Keys to recover contribution from the Ashmans in these circumstances is incompatible with the proportionate share approach. An essential tenet of this approach is that when a tortfeasor settles a claim against it, but does not obtain a release for the other tortfeasors, it has settled only its proportionate share of the total damages, no more and no less. It follows that what remains, and all that remains to be calculated is the compensation the non-settling tortfeasors owe the plaintiff. Once that amount is determined at trial, the nonsettling tortfeasors are liable only to the plaintiff and only to the extent the trial verdict determines. Their trial-determined liability is in no way affected by the settlement defendant's negotiated liability. *See id.* at 220, 1114 S.Ct. at 1471 ("[O]ne of the virtues of the proportionate share rule is that, unlike the *pro tanto* rule, it does not make a litigating defendant's liability dependent on the amount of a settlement negotiated by others without regard to its interest.")

Applying the proportionate share approach to this case, Florida Keys resolved through the settlement only the amount of damages it owed to the Murphys. The settlement determined between those two parties the amount of damages the Murphys suffered and Florida Keys' percentage of fault. There is nothing about the issue of how

much Florida Keys should have paid the Murphys that is to be litigated between Florida Keys and the Ashmans, because under the proportionate share approach it does not matter to the Ashmans ow much Florida Keys should have paid the Murphys to discharge its liability to them. That is Florida Keys' business, not a matter of concern for the Ashmans.

*Id.* at 1314–15. The Eleventh Circuit also noted that it had reach the same conclusion in *Jovovich v. Desco Marine Inc.,* 809 F.2d 1529, 1531 (11th Cir.) which was ignored in a later ruling by the 11th Circuit for a time and it returned to that analysis. This Court finds this logic persuasive and controlling in the instant matter.

The Vessel Interest's assertion that because the United States was unavailable as a defendant in state court, *AmClyde* and *Florida Keys* should not apply ignores the reality of this litigation. In *Florida Keys,* Ashman was only a potential defendant as he was not named by the Murphys in their petition. Likewise, the United States was a potential defendant in federal court; the Crew Survivors never sued the Government. Additionally, the contribution claim against the United States which was brought in federal court by the Vessel Interests is analogous to the third-party demand found in *Florida Keys.* The Vessel Interests' claims for contribution and indemnity for the Government's role in these deaths was clearly being sought in this venue. Certainly, the Vessel Interests could have filed under Rule F of the Supp. R. of Admiralty for Limitation of Liability, forcing the Crew Survivors into some kind of adjudication with the United States as a party. It must be remembered that as the United States and plaintiffs are jointly and severally liable with respect to the Crew Survivors, the Crew Survivors were entitled to proceed against either one or both for their full damages. Indeed, Crew Survivors did so; they did not file suit against the United States. It was up to the Vessel Interests to protect themselves in this matter.

Finally, the contention that the Vessel Interests have clearly paid for both their share of damages and that of the United States (Memorandum in Opposition at 14–15) is curious at best, considering that the Vessel Interests in the Receipt and Release paid only one half of the Judgment of Settlement award and was given the right to pursue contribution for the unpaid portion of the Crew Survivors' claims. Moreover, the Crew Survivors were not to receive a penny from any recovery by the Vessel Interests obtained from the United States until the Vessel Interests recovered (1) the amount they paid to the Crew Survivors, (2) the cost of litigating the state suit and (3) the cost of litigating the federal suit. This arrangement does not pass muster under *AmClyde* and *Florida Keys.* The Motion for Dismissal must be granted in this regard as well. Accordingly,

**IT IS ORDERED** that the Motion for Dismissal of Second Amended Complaint (Doc. No. 33) is **GRANTED** and judgment shall be entered in favor of the United States and against North and South American Shipping, Guilford Navigation, and The American Steamship Owners Mutual Protection and Indemnity Association dismissing their claims with prejudice, each party to bear its own costs.